## MORRISS v. HUDSON MOTOR CAR CO.

Circuit Court of Appeals, Fifth Circuit.
March 9, 1928.

No. 5096.

Sales ⬤═➤91—Cancellation of contract by one party held authorized by its terms.

Contract by which an automobile company agreed to furnish to a distributor a scheduled list of cars during the coming year, which was renewed annually, *held* to expressly provide as one of its terms that either party should have the right to cancel it at any time on 15 days' notice, and its cancellation by the company *held* not to subject it to liability for damages.

Appeal from the District Court of the United States for the Northern District of Texas; William. H. Atwell, Judge.

Action at law by William Morriss against the Hudson Motor Car Company. From the judgment, plaintiff appeals. Affirmed.

Joseph Manson McCormick, of Dallas, Tex. (McCormick, Bromberg, Leftwich & Carrington, Henri Louie Bromberg, Thaddeus Bell McCormick, Snowden Marshall Leftwich, and Paul Carrington, all of Dallas, Tex., on the brief), for appellant.

Rhodes S. Baker and William R. Harris, both of Dallas, Tex. (Beaumont, Smith & Harris, of Detroit, Mich., Thompson, Knight, Baker & Harris, of Dallas, Tex., Archibald Broomfield and Melville C. Mason, both of Detroit, Mich., and Joseph H. Ranson, of Dallas, Tex., on the brief), for appellee.

Before WALKER BRYAN, and FOSTER, Circuit Judges,

FOSTER, Circuit Judge. Appellant brought suit to recover some $230,000 for damages for breach of contract alleged to have been caused by the refusal of appellee to ship certain automobiles that had been allotted to him as distributor. Appellee admitted an indebtedness of $4,068.28, and a verdict in that amount was directed for appellant, rejecting the balance of the claim. Error is assigned thereto.

The material facts appearing from the record are these: Appellant was engaged in the wholesale and retail sale of automobiles in Dallas, Tex., and in November, 1918, first began doing business with appellee as a distributor for Hudson and Essex cars. The arrangement was made in Detroit verbally, as it was thought that the usual distributor's contract used by appellee in all the other states would be violative of the Texas laws. This contract was renewed each year thereafter up to and including the period from December 1, 1924, to November 30, 1925. According to the method of doing business, some time before the beginning of the yearly period an allotment of cars would be agreed to by appellant and appellee for the ensuing term, and a schedule would be made up, showing the number of each different model of both makes of car to be shipped. At the beginning, and again towards the end, of each month, appellant would notify appellee what cars to ship him. They were shipped from Detroit on order bills of lading, attached to sight drafts, which were paid before appellant obtained possession of the cars. The allotment was not strictly adhered to. Some years more cars and some years less were ordered and shipped.

The controversy in this case arises over the allotment for the year 1924–1925. With regard to that, on September 23, 1924, a schedule calling for 1,786 cars was mailed to appellant, together with a letter in terms as follows, which is practically the same as previous letters sent to appellant each year. Section 13 of the contract blank referred to provided for cancellation by either party, with or without cause, on 15 days' notice. This clause was also made a part of the previous letters.

"We are inclosing specification sheet of our contemplated shipments to you for 1925. We assume you understand that the sending of this specification sheet is not to be construed as a guaranty that we will deliver the numbers of cars or models specified. Our delivery situation is subject to strikes, fires, our ability to obtain labor or material, and to all other conditions not within our control. In the absence of the customary memorandum of agreement, which the balance of our distributors execute, and so that you will be conversant with our method of doing business with the balance of our distributors, we are attaching a blank copy of our distributor's contract. Section 13 of this blank contract is made a part of this memorandum for your protection, as well as ours."

In making contracts with subdistributors, appellant used a form of contract which also provided for cancellation on 15 days' notice, substantially the same as the form sent him annually. Some dissatisfaction having arisen on the part of appellee with appellant's sales, on April 13, 1925, appellee wrote the following letter to appellant:

"Detroit, Mich., U. S. A., April 13, 1925.

Registered Mail.

"William Morriss, Dallas, Texas—Gentlemen: We beg to advise that we have de-

cided to ship no more Hudson or Essex cars or parts to you after June 30, 1925. On the above date, if you so desire, we will purchase from you—

"1. All your stock of new and unused current repair parts of our manufacture at invoice price at time of purchase (net of discounts, allowances, or adjustments); the word 'current,' as used in this connection, designating parts used on Hudson and Essex cars built on and after July 1, 1920.

"All new and unused Hudson and Essex motor cars which you have on hand, and which we have shipped to you subsequent to July 1, 1924, the price to be paid for these cars being the invoice price at the time of purchase net of discounts, allowances, or adjustments.

"Yours very truly,

"[Signed]      Hudson Motor Car Company,
       O. H. McCornack, Vice President.
"OHM :LH."

Thereafter appellant shipped cars up to June 30, 1925, and appellee paid the drafts and received the cars. Appellant contends that the contract for 1924–1925 was in fact made, before the receipt of the letter of September 23, 1924, in Houston, between himself and Mr. James, representing appellee, that the allotment was agreed to verbally, and that the allotment was not subject to change, except by mutual consent.

Appellant's own testimony shows that he received the letter of September 23, 1924, and knew the clause providing for cancellation of the contract on 15 days' notice, but did not say anything about it to appellee until in January, 1925, when he had a conversation with Mr. Segwalt, assistant sales manager of appellee, in Chicago, at which time he asked Segwalt if he claimed the right to cancel the contract. He testified in substance that Segwalt said he did not claim the right to cancel and intended to ship the full allotment. Segwalt denies this part of the conversation entirely. There is also testimony tending to show James had no authority to make a distribution contract.

We think the evidence shows conclusively that the agreement contemplated the right of either party to cancel it on 15 days' notice, and that there was no meeting of minds on any other form of contract. It is contended, however, by appellant that the testimony was conflicting, and such that reasonable minds might draw different conclusions from it, and that this warranted a submission of the case to the jury on the special charges requested and refused.

We cannot agree with this contention.

Considering the previous course of conduct, regardless of what may have transpired between appellant and James in Houston, the conclusion is inevitable that the parties were renewing an agreement about which there could be no doubt as to the right of cancellation. The letter of September 23, 1924, which was not objected to, and on which both parties acted, must be considered as the confirmation of the contract and shows there was no intention to change the terms of agreement. The only material conflict in the evidence is as to the conversation between appellant and Segwalt. Giving Morriss' testimony full effect, it is not sufficient to show a new contract or an agreement to change the existing contract.

The conflict in the evidence was not sufficient to require a submission to the jury. The rule is thus stated in Barrett v. Virginian Ry. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092: "It is now a settled rule in the courts of the United States that whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court."

Entertaining these views, it is unnecessary to consider the other questions presented on the brief and in the argument. We find no reversible error in the record.

Affirmed.