BARNEY MOTOR SALES, a California Corporation, Plaintiff,

v.

CAL SALES, INC., a California Corporation, Defendant.

Civ. No. 54–59–TC.

United States District Court
S. D. California,
Central Division.

Nov. 3, 1959.

Potruch & Lerten, Los Angeles, Cal., for plaintiff.

H. Spencer St. Clair, Los Angeles, Cal., for defendant.

THURMOND CLARKE, District Judge.

This suit is brought by a dealer in Triumph motor cars for failure to renew his franchise contrary to the provisions of the Automobile Dealers' Day in Court Act of 1956, 15 U.S.C.A. §§ 1221–1225. Defendant has moved for summary judgment on the grounds that it is not a "manufacturer" as contemplated by the terms of the Act.

In substance, the affidavits and pleadings before the court show that defendant is a California corporation engaged in the distribution of Standard-Triumph Motor Cars in the State of California and in certain other western states. The stock ownership of the corporation is in the hands of Walter G. Danielson, Dorothy Deen, and Paul Bernhardt, citizens of the State of California. The manufacturer of Standard-Triumph motor cars, an English corporation, has no ownership interest whatever in the defendant distributing company. Defendant contends that its arrangement with the Standard-Triumph Motor Co. of Coventry, England, is precisely the sort of franchise agreement which would give the defendant a cause of action under the Day in

Court Act in appropriate circumstances against the English manufacturer. It follows from this, according to the defendant, that its own franchising arrangements with the ultimate retail dealers in Standard-Triumph motor cars are exempt from the coverage of the Act in question, which in pertinent part reads:

"(a) The term 'automobile manufacturer' shall mean any * * * form of business enterprise engaged in the manufacturing or assembling of passenger cars * * * including any * * * corporation which *acts for* and is under the *control* of such manufacturer * * * in connection with the distribution of said automotive vehicles." (Emphasis supplied.)

If this section were reasonably read to require only ownership control in order for an automobile distributor to be charged with manufacturer's liability under the Act, the granting of defendant's motion would be a matter of course. Plaintiff contends, however, that the agency and control intended by the statute are *de facto* subordination to the wishes and interests of the automobile manufacturer, whether expressed in a written contractual form, or in a course of dealing. This being a case of first impression on the question of law at hand, the court has had recourse to the legislative history of the statute, and to the learned commentary of Prof. Friedrich Kessler in "Automobile Dealer Franchises", 66 Yale L.J. 1135, for which grateful acknowledgment is hereby given.

■ Without going into the details of the history of franchise bargaining in the automobile industry, it may be said that Congress has recognized that the bargaining power of the manufacturer vis-à-vis the dealer is so great that the terms of any franchise agreement can be dictated virtually in their entirety by the manufacturer;[1] the resulting "contract of adhesion" could be designed to include exculpatory clauses immunizing the manufacturer from suits based upon bad faith termination of the agency relationship,[2] or it could be framed so vaguely as to be unenforceable in the courts because of indefiniteness of terms.[3] In short, any recognized legal device which would obviate dealer's suits upon the franchise against the grantor of the franchise could be exacted by the latter. The history of the devices used to effectuate this single end of immunization of the manufacturer from dealers' suits is an interesting commentary on the evolution of the law of contract;[4] suffice it to say here, however, that Congress in enacting the legislation at hand was directing itself to the basic evil—the disparity in bargaining power between the parties to the franchise arrangement—in requiring that the termination of franchises, whether by non-renewal or otherwise, be done only in good faith for sufficient reasons.[5] The dealer was to be given his day in court on an allegation of bad faith termination regardless of the legal import of the words used in the "contract" which he had signed. The extreme vagueness of the concept of good faith or bad faith used by Congress in the provision at hand is testimony to the fact that the intention was to control the dealer-manufacturer relationship in its essential premises (by allowing the trial court wide discretion in giving specific formulation to the immensely vague term "good faith") and to disregard the traditional legal implications of words which purported to, but in fact could not, signify the mutual intentions of the parties.

1. S.Rep. No. 3791 84th Cong., 2d Sess. 1956, 1939 FTC Rep. on Motor Vehicle Industry (1939)–139–146 Kessler, op. cit. p. 1147, and cases cited.

2. Kessler, op. cit. p. 1147, and cases cited.

3. Moon Motor Car Co. v. Moon Motor Car Co., 2 Cir., 1928, 29 F.2d 3, opinion of Learned Hand, J.; Kessler, op. cit. p. 1150.

4. Kessler, op. cit. p. 1149 et seq.

5. S.Rep. No. 2073 84 Cong. 2d Sess. 4 (1956).

■ It is our opinion that the Act's definition of "manufacturer" must be read with the above analysis in mind; and with the obvious reflection that a simple device to perpetuate the bargaining domination enjoyed by manufacturers without the risk of legal recourse as contemplated by the Act would be to multiply the intermediary agencies through which the will of the manufacturer is expressed. So long as the economic conditions giving rise to the inordinate bargaining power could be maintained with respect to subordinate and intermediary distributors, the power to exact any terms could itself be used to compel the middle man to pass on the terms and conditions desired by the manufacturer to the ultimate retailer. And the essence of the Act, as we read it, was to provide that this chain of domination, whether forged of one link or of many, was to be broken. When the instrumentality used to exact onerous conditions of continuing in the automobile retailing business is "acting for" the manufacturer in the sense that he is employed by the manufacturer willingly or unwillingly to bring about the condition of subservience aimed at in the Act, we are of the view that the instrumentality is itself a part of the manufacturer bound by the Act's requirement of good faith. We are mindful of course that holding intermediary parties liable under the pseudo-*respondeat superior* doctrine which we believe the Act's definition of manufacturer imports is apt in some cases to impose a very considerable hardship upon the defendant party. It is not for us to criticise the policy of the Day in Court Act for so completely redressing the balance between franchiser and franchisee, if such is the case; neither can we suggest better legal devices to insure that economic responsibility is coupled with economic power than that of counterbalancing the power which may be exerted by manufacturers upon distributors and thence to the dealer with an equal and opposite judicial force in favor of dealers against distributors, and thence, by necessity to manufacturers. It is apparent that as soon as the purpose of exploiting the distributor—to wit to relay the exploitation on to the dealer—is thwarted by the operation of the Day in Court Act, the unfortunate squeeze upon the distributor will cease, and his function will be confined to whatever legitimate purposes are served by the concentration of merchandising authority in a separate enterprise from the manufacturer.

■■ With the above understanding of the Day in Court Act we believe it is necessary to deny defendant's motion for summary judgment, and to permit the plaintiff to introduce what evidence he can to demonstrate that Cal Sales, Inc., is dominated by and acts for Standard-Triumph of Coventry, England, and that the non-renewal of the franchise agreement was in bad faith. Due consideration will be given by the court to defendant's allegation that the arrangement with Barney Motor Sales was meant by the parties to be a tentative one, as is recited in the instrument alleged in this suit. But this recital will not be conclusive against a showing by convincing evidence that the commitment of the parties was understood as a long term arrangement terminable only for good cause. In short, we are convinced that the Day in Court Act instructs us to view the recitations of parties to franchise agreements with a grain of salt, and to measure such recitals against the operative facts in the particular situation, including the degree of reliance evinced by both parties on the proposition that the arrangement at hand is to be a lasting one.

It is therefore now ordered that defendant's motion for summary judgment is denied.

It is further ordered that the Clerk shall this day serve copies of this opinion and order by United States mail upon the attorneys for the parties appearing in this cause.