ASSOCIATED BEVERAGES COMPANY
and Maurice Pepper, Appellants,

v.

P. BALLANTINE & SONS, Appellee.

No. 18335.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1961.

Sidney Pepper, New York City, H. Fred Gober, Atlanta, Ga., Arnall, Golden & Gregory, Atlanta, Ga., DeWitt, Pepper & Howell New York City, for appellants.

Griffin B. Bell, Atlanta, Ga., M. Hardeman Blackshear, Jr., Spalding, Sibley, Troutman, Meadow & Smith, Atlanta, Ga., of counsel, for appellee.

Before JONES and BROWN, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge.

Appellants seek reversal of the District Court's order which granted appellee's motion for summary judgment.

Ballantine brought action to recover the sum of $17,191.64 from Associated Beverages Company and/or from Pepper as guarantor.

Associated was a distributor of Ballantine beer and had been distributing for Ballantine since 1946. On November 10, 1949, Ballantine sent to Associated a letter quoted in its relevant parts here:

"It is understood that you, as well as P. Ballantine & Sons, reserve the right to discontinue this distributorship at any time upon seven days' notice by registered mail.

"All orders for merchandise placed by you shall be subject to approval at our office in Newark, New Jersey. All sales made to you shall be at such prices and upon such terms as may from time to time be established by our office in Newark, New Jersey, subject of course to applicable laws and regulations. * * *

"It is understood that this letter supersedes any arrangement heretofore entered into between us. Our sales representatives will continue to call upon you at regular intervals, and should these sales representatives purport to obligate this company in any manner, it will not be binding unless confirmed in writing by our office in Newark, New Jersey.

"It is further understood that this arrangement may not be changed or modified except in writing, duly approved and signed by the General Sales Manager or a corporate officer of P. Ballantine & Sons. * * *."

There were subsequent letters from Ballantine to Associated, which delineated areas of the State of Georgia wherein Associated was authorized to distribute Ballantine beer. In each of the subsequent letters Ballantine reiterated that the arrangement set forth in the letter of November 10, 1949 remained in full force and effect.

On May 16, 1957, Ballantine sent Associated a notice of termination of the distributorship. The effective date of the termination of the distributorship was stated to be May 25, 1957. At that time there was a balance owing on account to Ballantine.

Associated admitted that this payment had not been made, but counterclaimed for alleged overcharges for beer as far back as 1946.

These overcharges were the result, Associated contended, of Ballantine charging it more for beer than was charged other distributors in other parts of the country and further urged that this violated their agreement which provided for sales at "established" prices. Other breaches were asserted in the counterclaim involving wrongful termination and alleged violations of the anti-trust laws.

On December 1, 1959, following hearing a pre-trial order defining the issues was filed. This order was consented to in all particulars by counsel for all parties. It was stated that the parties agreed that the beer which made up the open account was received by Associated and that Associated had not paid for it. The overcharge claimed by Associated was not admitted by Ballantine. The order also stated that Associated agreed that, if there were any violations of the anti-trust laws, the only section of the law applicable would be Section 3 of the Clayton Act (15 U.S.C.A. § 14). It was agreed by the parties that the subsequent course of the litigation would be governed by this pre-trial order and a stipu-

lation, which was to be filed at a later time, unless either or both were modified to prevent manifest injustice.

The stipulation was, in fact, filed January 13, 1960. Its pertinent parts are as follows:

"2.

"The following are the sole issues for decision in this cause:

"(a) Under the letter agreement entered into by plaintiff and defendant Associated Beverages Company under date of November 10, 1949 as amended by letter agreements dated March 9, 1953, February 8, 1955, January 3, 1956, April 18, 1956, and May 9, 1956 * * * was defendant Associated Beverages Company entitled to make purchases from plaintiff at the *established Brewery prices?* * * * (Emphasis added.)

"(c) Did plaintiff violate the aforesaid agreement, as amended, with defendant Associated Beverages Company?"

On the day that this stipulation was filed, Ballantine moved for summary judgment asserting that since it was agreed that the letter agreements formed the entire contract between the parties, and since the agreement was subject to construction by the court there was no question of fact for the jury. Ballantine urged that the pre-trial order and the stipulation established the fact without dispute that Associated owed Ballantine $17,191.64 on account and the same pre-trial order and stipulation affirmatively showed that the counterclaim should be denied as a matter of law.

Shortly before hearing on this motion for summary judgment, Associated sought leave under Rule 16, Federal Rules of Civil Procedure, 28 U.S.C.A. [1], to amend its complaint and the stipula-tion upon which the motion for summary judgment was based, contending that the contractual relationship between the parties was not fully set forth by the letters but required jury determination. This testimony would have to do with oral representations allegedly made by Ballantine's officials and sales representatives substantially altering the letter agreement in several particulars. Moreover, it argued, the letter agreement itself was ambiguous and such words as "distributing", "service" and "established" required parol evidence to explain. The district court refused to modify the pre-trial order or allow amendment to the stipulation and the complaint. Based upon the stipulation and pre-trial order the court then entered summary judgment for Ballantine on open account for $17,191.64 and against Associated on its counterclaim.

The appeal here challenges the denial of reopening of the pre-trial order, stipulation and complaint, and attacks the order granting summary judgment.

We find no error in the rulings of the district court.

While the court always has the responsibility to cut a litigant from the snares and tangles of a procedural trap, whether it be created by his own or another's doings in order to prevent manifest injustice, the court's duty is equally clear to give full force and effect to the commitments of counsel duly and voluntarily made as to the truth of simple facts. After considerable negotiation between the parties here a stipulation was filed and approved by the court. In addition to counsel for the parties also present at these conferences was Maurice Pepper, who was one of the appellants in his personal capacity, who was also President of the corporate appellant, and who was also an attorney himself.

---

1. Rule 16 as relevant:
   "The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

Nor can we say there was error for the district court in refusing in February to modify its pre-trial order, carefully prepared and entered with full consent of all the parties in the previous December. Careful use of the pre-trial procedures under Rule 16 will continue to be one of the most effective tools in the administration of justice only so long as it be regarded as a vital and integral part of the judicial process, and enforced by a deliberate court with fairness. See Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp., 5 Cir., 270 F.2d 635, at page 639:

"Ambiguities in stipulations, as in the case of other agreements, may be removed and the intention of the parties may be determined by judicial construction, but the courts cannot, under the guise of construction, insert into an agreement an essential element such as the subject matter to which the agreement shall apply. Such a defect cannot be remedied by any conduct of the parties which falls short of an agreement of itself, or an estoppel; *nor can such a deficiency be supplied* by one party without the assent of the other, whether attempted by testimony or otherwise." (Emphasis added.)

■ Appellants further contend that even though they be bound by the consent order and stipulation still the court erred in granting summary judgment because, they say, the documents themselves are vague and ambiguous in several respects. We agree with the district court that the language of the letter agreement of November 10, 1949, quoted above, very plainly gave Ballantine the right to discontinue, without cause, and the record shows that this was done by letter of May 16, 1957. There was no need for explanatory testimony on this point.

Moreover, "All sales made to you shall be at such prices and upon such terms as may from time to time be established by our office * * *" meant to the district court that Ballantine could set the price of its product to Associated and not, as appellants urge, that the price must be "established" by reference to Ballantine sales to other distributors elsewhere. As the district court put it: "To hold that under the contract here plaintiff was bound to sell its products to defendant at a price established as common to all distributors, would be the writing of an agreement into which the parties have not entered."

■ Since the relationship between them has been determined to be embraced in the letters referred to, there is patently no merit at all in appellants' final contention that Ballantine violated Section 3 of the Clayton Act (15 U.S.C.A. § 14).

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

A careful reading of the entire agreement does not disclose a single reference to any matter prohibited by that statute and there is nothing otherwise suggested as governing their relationship as brewer and distributor with which this section of the Clayton Act is concerned.

Appellants' final contention that the pretrial order and the subsequent stipulation merely sharpened the anti-trust issue and did not, therefore, submit to the district court an agreed statement of facts for its application to the Clayton Act may be accepted, arguendo, without impairment to this holding.

The language of appellants' counterclaim itself, without reference to the stipulation, does not state a violation of the Clayton Act under the doctrine laid down in United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 443.

This Court in Nelson Radio & Supply Co., Inc. v. Motorola, Inc., 5 Cir., 1952, 200 F.2d 911, at pages 915–916, certiorari denied 1953, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356, citing the Colgate case, supra, said:

"Section 3 of the Clayton Act, by its express terms, covers only leases, sales, or contracts actually made on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods of a competitor of the lessor or seller. There is nothing whatever in the Act to suggest that it covers a situation where the manufacturer refuses to make a sale or enter into a contract, and it has been stated time and again that a manufacturer has the unquestioned right to refuse to deal with anyone for reasons sufficient to himself. [Citing the Colgate case and others.] For that matter, a review of all of the cases decided by the Supreme Court involving Section 3 of the Clayton Act, reveals that in each of them there was an agreement and not a mere refusal to deal. There is a real difference between the act of refusing to deal and the execution of a contract which prevents a person from dealing with another. The plaintiff has not been injured as the result of a contract, either express or implied, which sought to prevent him from dealing in the goods of any competitor of the defendant."

While the parent Colgate case came under sharp discussion in United States v. Parke, Davis & Company, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 [February 29, 1960], nothing in this recent case compels a different result here. The alleged activities of Ballantine in refusing to deal with its distributor did not purport to bind appellants to observe fixed retail prices, nor did it seek to secure adherence by appellant to any suggestion to this effect, and did not carry with it any restrictions condemned by the statute.

The judgment of the district court is affirmed.