**B. T. WOODARD and B. J. Woodard,**
d/b/a Woodard Motor Company,
Appellants,

v.

**GENERAL MOTORS CORPORATION,**
Appellee.

No. 18758.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1962.

William P. Fonville, Alan D. Feld, Dallas, Tex., for appellants.

Gillis A. Johnson, Ira Butler, Ft. Worth, Tex., Daniel Boone, Detroit, Mich., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Here again we have appellants who, before the district court, vigorously insisted that there was no genuine issue of material fact and sought a summary judgment, and who now, before this Court, are attempting to upset a summary judgment against them by contending with no less vigor that there are a half dozen major issues of disputed fact, each of which they say must be resolved in order to reach a decision of the cause, with an equal number of disputed questions on minor fact issues.

The appellee, General Motors Corporation, is a manufacturer of automobiles, trucks and other products. Its manufacturing and marketing are carried on through divisions. Thus its Buick automobiles are made and marketed through its Buick Division, and Chevrolet automobiles and trucks are made and marketed through its Chevrolet Division.

The appellant B. T. Woodard is the father of appellant B. J. Woodard. We will refer to them as "Father" and "Son." In 1931 the Father became a dealer in Chevrolet motor vehicles at Grandview, Texas. Five years later he moved to Greenville, Texas, where he continued as a Chevrolet dealer. In 1937 the Father became a dealer in Buick automobiles while continuing as a dealer in Chevrolets. The term used in automobile parlance for the combined operation such as was here present seems to be "dualed dealership." In 1947 the Son acquired an interest in the automobile ventures by a gift from the Father and thereafter the businesses were operated as a partnership. The Woodards' automobile enterprises were carried on in rented premises at 3207 Lee Street, in the City of Greenville.

In June of 1955 Father and Son were informed by representatives of appellee's Buick Division that the Buick contract of the appellants would not be renewed as it was desired by the appellee that the Buick and Chevrolet dealerships be separated. The appellants had been informed some considerable time earlier of Buick's desire to separate the dealerships. After several conferences between one or both of the appellants and representatives of the appellee's Buick Division, it was agreed that a Buick dealership would be given to the Son upon condition that the Buick business be separated from the Chevrolet business. A location at 1403 Stonewall Street, in Greenville, was acquired in September of 1955, and the Buick business was moved to that location. The lease on the Lee Street property was to expire in April, 1956, and the appellants were unwilling to renew on the landlord's terms. Appellee's Chevrolet Zone Manager, after inspecting several alternative locations, recommended that the Chevrolet dealership be kept at the Lee Street location. The Son discussed the possibility of renting a quonset-type

building for the housing of the Buick deal but nothing came of it. The Father, some time early in March, 1956, discussed with appellee's Chevrolet District Manager, a proposal to move the Chevrolet business into the Stonewall location with the Buick dealership. The District Manager was several steps below the Zone Manager in the General Motors hierarchy. After an unsuccessful attempt to advise the Zone Manager by telephone of the contemplated move, the District Manager made his report by mail. A few days later the District Manager told the Father that he "guessed" the proposed move would be all right because he had heard nothing from the Zone Manager. The move was started in March and finished on April 6, 1956. The Zone Manager, upon learning of the move, expressed his dissatisfaction, and in so doing he objected to the Stonewall Street site as well as to the redualing of the two dealerships. He registered a complaint that the move had been undertaken without his approval. The appellants promised to obtain another location for their Chevrolet dealership, and renewed their prior assurances that the combined operation was purely temporary.

Because, it seems, of the unwillingness of the appellee to permit the appellants to leave the Chevrolet operation in the Stonewall location and to continue the combined or dualed operation, the appellee, in the spring of 1956, withheld the making of a renewal contract with the appellants for the Chevrolet dealership. However, at a meeting on May 29, 1956, between appellee's Chevrolet Zone Manager and the Father a renewal contract was executed. The appellant was described in the preamble of the agreement as Chevrolet Motor Division—General Motors Corporation, and was therein referred to as Chevrolet. At this meeting the Father once again repeated the promise that the Chevrolet operation would be removed at an early date from the Stonewall Street address. Although executed some weeks later, the agreement bore a printed date of March 1, 1956. Included among the terms and conditions

as Paragraph 11 of this agreement are the following provisions:

"In order to provide product representation commensurate with the good will attached to the name 'Chevrolet' and to facilitate the proper sale and servicing of Chevrolet motor vehicles, chassis, parts and accessories, Dealer will maintain a place of business satisfactory as to appearance and location, and adequate in size and layout for new car sales operations, service operations, parts and accessories sales and used car sales, and will maintain the business hours customary in the trade.

"Once Dealer is established in facilities and at a location mutually satisfactory to Dealer and Chevrolet, Dealer will not move to or establish a new or different location, branch sales office, branch service station, or place of business, including any used car lot or location without the prior written approval of Chevrolet."

Among the provisions of Paragraph 23 of the agreement, relating to termination, is the following:

"If Dealer does not conduct its business in accordance with any requirement set forth in Sections 11 through 17, inclusive, or Section 19 of this Agreement, Chevrolet may terminate this Agreement by giving to Dealer written notice of termination to be effective three (3) months after receipt of such notice."

In July, and again in August, 1956, the appellee's Buick representatives were urging and insisting that something be done to separate the Buick and Chevrolet businesses, and the Son continued to make promises that the demands would be complied with. The appellants, at this time and for some months, perhaps a year or more, had been discussing the possibility of acquiring and building upon an undetermined site on a new highway which was being built into Greenville. Nothing had been done to further this project for the assigned reason that the State High-

way Department was not able to give information as to the location of access roads. Conferences and correspondence continued, with the appellee, through both its Buick and Chevrolet representatives, insisting that the appellants do something about separating the dealerships and providing suitable space in a satisfactory location for the Chevrolet dealership, and the appellants doing little except continuing to make promises. Finally, in October of 1956, the appellee advised that unless something was done by January 1, 1957, to provide the Chevrolet deal with suitable quarters, some action would follow. More conferences were held; more letters were written; more time was sought by appellants in which to procure other facilities. The two dealerships remained together at the Stonewall Street location.

In April the appellants were looking for a purchaser for the Chevrolet portion of their business and at the same time were renewing their requests that the appellee allow them more time within which to procure other facilities. In the latter part of April the appellants advised appellee that it was then unwise to acquire a site on the new highway. In May the Son asked the appellee to send him a buyer for the Buick operation. In June the Buick dealership was sold. On the day of this sale the Father wrote to the Assistant General Sales Manager of the appellee's Chevrolet Division complaining of the treatment he had received and of the imminent cancellation of the Chevrolet sales agreement. An acknowledgment of this letter was followed, on July 23, 1957, with advice from the appellee to the appellants that the Chevrolet agreement was being cancelled. There was further correspondence between the parties in which they reviewed the background of the controversy and stated their respective contentions.

The suit was started in the district court in the fall of 1957, with jurisdiction being initially based on diversity of citizenship. Compensatory damages in the amount of $250,000, and exemplary damages of $150,000, were sought. On January 24, 1958, the appellee's Regional Manager of its Chevrolet Division wrote the appellants offering them a new Chevrolet sales contract upon condition that adequate facilities be obtained. The appellants rejected the proposal in a long argumentative self-serving letter to which the appellee responded in kind. Such is an outline of the general sequence of the events leading up to this litigation. Other facts will be recited as the particular issues presented are considered.

After defensive pleadings were filed by the appellee, an amended complaint in two counts was filed by the appellants. The first count, like the original complaint, charged a breach of contract without reference to statute, and in paragraph numbered 13 of the pleading it was asserted that the appellants were damaged by the appellee's termination of the contract by reason of a loss of profits which they would have realized under the franchise agreement, in the amount of $250,000. The second count asserted a claim under the Automobile Dealers Franchise Act, sometimes referred to as the Automobile Dealers Day in Court Act, Public Law 1026–84th Congress,[1] on the ground that

1. "As used in this Act—
* * * * *
"[Section 1] (e). The term 'good faith' shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, That recommendation, endorsement, or exposition, persuasion, urging, or argument shall not be deemed to constitute a lack of good faith.

"Sec. 2. An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the costs of suit by reason of the failure of said automobile manufacturer from and after the passage

the appellee failed to act in good faith in terminating and cancelling the franchise agreement. The first paragraph of the second count is numbered 14. In the last paragraph of the amended complaint, numbered 17, it is said that the appellants, by reason of the tortious breach of the agreement by the appellee, became entitled to recover exemplary damages in the amount of $500,000. Thus it might seem, reading the paragraphs of the amended complaint in sequence, that paragraph 17 was a part of the second count with the result that a claim was asserted for compensatory but not punitive damages on the common law cause of action for breach of contract, and for punitive but not compensatory damages under a statutory cause of action under the Automobile Dealers Act. The confused condition of the appellants' pleading was not clarified by an amendment to the amended complaint in which, as paragraph 18, it was averred that by reason of the violation of the Act "as set forth in paragraphs 14 through 16" the appellants were damaged, in addition to loss of profits for the unexpired term of the contract, in the loss of anticipated profits in "the period," ad infinitum perhaps, "from and after" the expiration date as fixed in the contract.

Two specifications of error are made; first, that the district court erred in denying the appellants' motion for summary judgment on the ground that the undisputed facts established the appellee's liability as a matter of law, and second, that if the facts did not show the appellee to be liable, then there were genuine issues as to material facts. The appellants state, perhaps more specifically, their claims against the appellee in the following language.

"1. Claim for compensatory damages in loss of anticipated profits for wrongful breach of the Chevrolet franchise agreement before its term had ended;

"2. Claim under Section 1222, Title 15, United States Code, for compensatory damages for loss of anticipated profits beyond the end of the term of the franchise agreement for the failure to act in good faith in terminating the franchise agreement, in that appellee subjected appellants to coercion and intimidation and threats thereof by threatening to terminate and terminating the Chevrolet franchise agreement because appellants refused to be coerced and intimidated into building a new building or moving the Chevrolet dealership to a different location before appellants could obtain a location satisfactory to appellants, which appellants, under the terms of the franchise agreements, were not obligated to do;

"3. Claim for exemplary damages (alternative to 2 above) on account of the tort accompanying the breach of the franchise agreement."

Our question, broadly stated, is whether the undisputed material facts are such as to permit or require a determination that the appellee is without liability to the appellants for breach of contract under the common law or for breach of contract or statutory duty under the Automobile Dealers Act. Stated in more narrow confines the problem is whether, as the appellee insists and as the district court found, the appellee was justified, on the undisputed facts, in terminating the contract under paragraph 23 thereof for a breach by the appellants of the provisions of paragraph 11, or whether, as the appellants urge, there is evidence that they fully complied with paragraph 11, or that the appellee waived and is estopped to rely upon paragraph 11, and that the

---

of this Act to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: Provided, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith." 70 Stat. 1125, 15 U.S.C.A. §§ 1221, 1222.

termination was a wrongful breach of the contract or a violation of the Act.

It is the position of the appellants that when, on May 29, 1956, the contract dated March 1, 1956, was signed, the Chevrolet dealership was in the Stonewall Street premises, that location must be regarded as a suitable and satisfactory location, and that the appellee is not only estopped to assert the contrary but any such assertion and action thereon constituted coercion, intimidation, threats and bad faith giving rise to punitive as well as compensatory damages.

■ We are convinced of the correctness of the trial court's decision that there can be no recovery on the common law count for breach of contract. The situation is not one where the right to cancel provided in the agreement may be exercised at the option of either party. Such provisions are upheld under the law of Texas. See Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333; Morriss v. Hudson Motor Car Co., 5th Cir. 1928, 24 F.2d 806. The provision here, upon which reliance is placed, makes cancellation by the manufacturer conditioned upon the failure of the dealer to maintain "a place of business satisfactory as to appearance and location and adequate in size and layout" for the operation of the dealership. It is the manufacturer whose good will is attached to the name of its product, and the manufacturer, as well as the dealer, is concerned with the maintenance of the competitive position of the automobiles sold to and by the dealers throughout the trade area of the dealer. It is then the appellee who is to be satisfied under the terms of the agreement between the parties to this appeal. Under the common law, in cases where a right to terminate is given to a contracting party upon becoming dissatisfied, it is the rule that the reasonableness of his dissatisfaction is not to be questioned by the other contracting party or by any tribunal, subject only to the corollary doctrine, as announced by the Court of Civil Appeals of Texas, that the dissatisfaction "must not be fraudulently, and in bad faith, pretended, so as to simulate a dissatisfaction that does not in fact exist." Sanger v. Slayden, 7 Tex. Civ.App. 605, 26 S.W. 847, 851. The term "bad faith" as used by the Texas court is the equivalent of fraud, as appears from the foregoing quotation. See Walraven v. Farmers & Merchants National Bank, 96 Tex. 331, 74 S.W. 530. The principle announced in Sanger v. Slayden, supra, was applied by this Court in Ard Dr. Pepper Bottling Co. v. Dr. Pepper Co., 5th Cir. 1953, 202 F.2d 372. From the undisputed evidence, hereinafter reviewed, it is clearly apparent that there was no breach of the agreement by the appellee and no right of recovery of damages by the appellants under their common law theory as asserted in the first count of their amended complaint.

The Automobile Dealers Franchise Act has received considerable notice from the law reviews. Kessler, Automobile Dealer Franchises, 66 Yale L.J. 1135; Brown and Conwill, Automobile Manufacturer-Dealer Legislation, 57 Colum.L.Rev. 219; Strand and French, The Automobile Dealer Franchise Act, 25 Geo.Wash.L. Rev. 667; Note, 70 How.L.Rev. 1239; Note, 26 U.Cinc.L.Rev. 110; Note, 9 Stan.L.Rev. 760; Comment, 3 Wayne L. Rev. 206. It has received less attention from the courts in reported judicial opinions. Leach v. Ford Motor Co., D.C.N.D. Calif.1960, 189 F.Supp. 349; Schnabel v. Volkswagen of America, Inc., D.C.N.D. Ia.1960, 185 F.Supp. 122; Reliable Volkswagen Sales and Service Co., Inc v. World-Wide Automobile Corporation, D.C.N.J.1960, 182 F.Supp. 412; Barney Motor Sales v. Cal Sales, Inc., D.C.S.D. Calif.1959, 178 F.Supp. 172; Pinney & Topliff v. Chrysler Corporation, D.C.S.D. Calif.1959, 176 F.Supp. 801; Staten Island Motors, Inc. v. American Motor Sales Corporation, D.C.N.J.1959, 169 F. Supp. 378. Most of the law review discussions of the Act suggest serious questions as to the constitutionality of the Act and the appellee here challenges the validity of the statute on constitutional grounds. The constitutional attacks are on the theories that the Act is class legislation, that it unduly restricts the right

of contracting, that it rewrites existing contracts, that there is a vagueness, uncertainty and ambiguity in the statutory terms which render the Act nugatory, and that the vague and uncertain provisions create an unlawful delegation to the courts of a regulatory power. No judicial opinion has been brought to our attention in which the constitutionality of the Act has been discussed.

█ A Virginia statute has been upheld against charges that it violated the equal protection and due process clauses. E. L. Bowen and Company v. American Motors Sales Corporation, D.C.E.D.Va. 1957, 153 F.Supp. 42. An Act of the Minnesota Legislature has been sustained as a valid exercise of the police power. Willys Motors, Inc. v. Northwest Kaiser-Willys, Inc., D.C.Minn.1956, 142 F.Supp. 469. A concurring opinion in a case before the Supreme Court of Wisconsin stated that a statute of that state was invalid. Kuhl Motor Co. v. Ford Motor Co., 270 Wis. 488, 71 N.W.2d 420, 55 A.L.R.2d 467. A federal district court, sitting in Wisconsin, invoked the doctrine of abstention to permit the state courts to construe the state statute before passing upon constitutional issues. A. F. L. Motors, Inc. v. Chrysler Motor Corporation, D.C.E.D.Wis.1960, 183 F.Supp. 56. This Court, in Best Motor and Implement Co. v. International Harvester Co., 5th Cir. 1958, 252 F.2d 278, recognized the presence of constitutional doubts with respect to a Louisiana statute but found it unnecessary to resolve them. A Colorado statute, quite similar in its terms to the Automobile Dealers Franchise Act, was held invalid as in conflict with the Federal Constitution by a three-judge court in General Motors Corporation v. Blevens, D.C.Colo., 144 F.Supp. 381. It is a well settled rule that the constitutionality of a statute will not be judicially determined unless such determination cannot be avoided. Clay v. Sun Insurance Office, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170; United States v. Witkovich, 353 U.S. 194, 77 S.Ct. 779, 1 L.Ed.2d 765; United States v. International Union, 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed.2d 563, reh. den. 353 U.S. 943, 77 S.Ct. 808, 1 L.Ed.2d 763; Byers v. Byers, 5th Cir. 1958, 254 F.2d 205; 16 C.J.S. Constitutional Law § 94, p. 307. This settled doctrine permits and probably requires that we avoid any making of a decision with respect to the constitutionality of the Act.

█ The policy behind the enactment of the Automobile Dealers Franchise Act was to establish a balance of power as between manufacturers and dealers in the automobile industry by curtailing the economic advantages of the larger manufacturers and increasing those of the dealers. To effectuate this policy the Congress created a new cause of action permitting a dealer to recover damages from manufacturers upon the failure of the manufacturer to act in good faith in terminating or not renewing the dealer's franchise. By the statutory definition, "good faith" is restricted to a duty to act in a fair and equitable manner so as to guarantee freedom from coercion, intimidation or threats. The plain meaning construction of the definition would give to a dealer a cause of action only if the acts of the dealer are not fair and equitable and are coercive. The legislative history supports this construction. In the report of the Committee on the Judiciary of the House of Representatives it is said:

> "The principal effect of the bill as amended by the committee is to give the dealer a right of action against the manufacturer, where the manufacturer fails to act in a fair and equitable manner so as to guarantee the dealer freedom from coercion, intimidation or threats of coercion or intimidation. The term 'fair and equitable' as used in the bill is qualified by the term 'so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party.' In each case arising under this bill, good faith must be determined in the context of coercion or intimidation or threats of coercion or intimidation." H.R.Rep. No.

2850, 84th Cong.2d Sess. 9, U.S.Code Congressional and Administrative News 1956, p. 4596.

Judicial construction has applied the context of coercion doctrine in determining good faith. Leach v. Ford Motor Co., supra; Staten Island Motors, Inc. v. American Motors Sales Corporation, supra. In one case, however, the statutory definition of good faith was apparently overlooked and it was said that the trial courts were allowed a "wide discretion in giving specific formulation to the immensely vague term 'good faith!'" It is not strange or shocking that Congress should have restricted the cause of action to cases involving coercion, since one of the principal evils which the Act was designed to remove was the exertion of pressures by the dominant automobile maufacturers upon dealers to accept automobiles, parts, accessories and supplies which they neither needed nor wanted and which they felt their market would not absorb. S.Rep. No. 2073, 84th Cong. 2d Sess. 2.

■■ An automobile manufacturer is not precluded by the Act from including in its contracts with dealers, as the appellee has done here, requirements that dealers shall provide product representation commensurate with the good will attached to its trade name and facilitate the proper sale and servicing of its motor vehicles. The manufacturer is entitled to bargain for the protection of its good name, to provide for the trade acceptance of its wares, and to have a reasonable expectation that those who are marketing its cars have the facilities for coping with the sales efforts of those who are dealing in the products of competitors. Cf. Best Motor and Implement Co. v. International Harvester Co. supra. As is said in the House Report, the Act "does not prohibit the manufacturer from terminating or refusing to renew the franchise of a dealer who is not providing the manufacturer with adequate representation. Nor does the bill curtail the manufacturer's right to cancel or not to renew an inefficient or undesirable dealer's franchise." H.R.Rep. No. 2850, 84th

Cong. 2d Sess. 9. We do not think that the good faith requirement, whether viewed in or outside of the context of coercion, prevents a manufacturer from terminating a contract with a dealer where the dealer has, over a long period of time, violated a valid and material clause of the contract and has failed to comply with the continuing insistence of the manufacturer upon performance. And it is shown, we think, by the quoted portions of the House Report, that there was no legislative intent that the prohibited coercion should include a threat of cancellation if there should be a prolonged failure on the part of the dealer to heed the recommendations or yield to the persuasion of the manufacturer that the dealer make a bona fide effort to comply with its undertakings.

■ It is established by stipulation or by the appellants' admissions that the Lee Street location was a satisfactory facility for the Chevrolet dealership, that the dealership was moved from the Lee Street site to Stonewall Street without the permission of the appellee required by the contract, that the appellee stated at the time of the move and on many subsequent occasions that it considered the Stonewall Street premises to be unsatisfactory and inadequate for the Chevrolet dealership, that such location was in fact inadequate for the Chevrolet dealership, that at the time the Chevrolet deal was moved to Stonewall Street the appellants represented to the appellee that the Stonewall site was a purely temporary location, that no plans were ever made or site selected for a building, and no assurances were ever made by appellants as to when the appellee might expect this to be done. It appears that the appellee, at first patiently and hopefully and later with exasperation and despair, cajoled, then exhorted and finally demanded that adequate facilities be provided. From the time of the move of the Chevrolet dealership into the Stonewall Street property until the agreement was cancelled nearly a year and a half later, the appellants investigated and inquired as to locations and sites but at the end of

the period they were no nearer to the providing of an adequate facility for the operation of their Chevrolet dealership than when the prohibited move was made to the Stonewall Street location. The duty of good faith, however measured, did not require the appellee to continue the contract arrangement for a longer period.

On March 1, 1956, the date borne by the franchise agreement, the Chevrolet dealership was located at the Lee Street address. On May 29, 1956, the date on which the agreement was executed and delivered, the dealership had been moved to the Stonewall Street location. The appellants assert that because the dealership was at the Stonewall Street site on May 29, 1956, the appellee was estopped to deny that such premises were satisfactory or adequate. The doctrine of estoppel by contract, upon which the appellants rely, "means no more than that a party is bound by the terms of his own contract until set aside * * *." It is "based on the idea that a party to a contract will not be permitted to take a position inconsistent with its provisions, to the prejudice of another." United Fidelity Life Insurance Co. v. Fowler, Tex. Civ.App., 38 S.W.2d 128, 131. There can be no estoppel by contract in the absence of a showing by the party invoking it that he was misled to his injury by a reliance upon recitals in the instrument and that he had no notice of facts contrary to those recited. City of Lubbock v. Walsh, Tex.Civ.App., 316 S.W.2d 923; Kuykendall v. Spiller, Tex.Civ.App., 299 S.W. 522. To state these principles is to show the inapplicability of the doctrine of estoppel by contract in this situation. It was known by the appellants prior to the execution and delivery of the agreement that the appellee regarded the Stonewall Street premises as unsuitable and inadequate. Before, at the time of, and subsequent to the execution and delivery of the contract the appellants promised to procure a satisfactory and adequate location for the Chevrolet dealership. The efforts of the appellee in seeking compliance with these undertak-

ings were consistent with and in the enforcement of the contractual obligations of the appellants.

There are no other issues which require discussion. We find no error in the record requiring a reversal of the judgment. It is

Affirmed.