**AUGUSTA RAMBLER SALES, INC., Clarence L. Ehrlich, Robert E. Wills, Mrs. Eleanor H. Wills, and Louis S. Ehrlich, Plaintiffs,**

v.

**AMERICAN MOTORS SALES CORPORATION, Defendant.**

**Civ. A. No. 7825.**

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 4, 1963.

Bell & Bell, Augusta, Ga. McFarland & Cooper, Atlanta, Ga., for plaintiffs.

King & Spalding, Atlanta, Ga., for defendant.

MORGAN, District Judge.

The defendant, American Motors Sales Corporation (hereinafter referred to as Sales) has filed with this Court a motion for summary judgment on all three counts of a complaint brought by the plaintiffs Augusta Rambler Sales, Inc. (hereinafter referred to as Augusta) Clarence L. Ehrlich, Robert E. Wills, Mrs. Eleanor H. Wills, and Louis S. Ehrlich as a result of the termination, on December 21, 1961, by Sales of its automobile distribution franchise with Augusta for American Motors automobiles.

Augusta has also moved for a summary judgment in its favor on Count One as to the issue of liability alone.

The causes of action alleged by Augusta against Sales are in three counts. The first count seeks recovery for a breach of contract; the second count is upon the Automobile Dealers Franchise Act; and the third count seeks recovery by the individual plaintiffs for the alleged breach of the same dealer franchise agreement described in Count One on the theory that by implication the individuals were parties thereto and had a right of action for the breach.

Augusta seeks to recover in Count One for the alleged breach of an automobile dealer franchise agreement. Defendant terminated the agreement on ninety days notice, which it contends it had a right to do under the agreement in view of the

facts then existing. Augusta contends that Sales had no right to so terminate.

In Count Two Augusta and Clarence L. Ehrlich, Robert E. Wills, Mrs. Eleanor H. Wills, and Louis S. Ehrlich seek to recover for an alleged violation of the Automobile Dealers Franchise Act, it being contended that the dealership franchise extended to the individual plaintiffs as well as the corporation. Damages are claimed for an alleged illegal termination of the franchise in violation of said Act.

In Count Three the said individuals seek recovery for an alleged breach of an implied contract which they contend existed between them and Sales, it being their contention that by implication they are parties to the agreement described in Count One, and that they, as individuals, are entitled to recover for the alleged breach.

Obviously, if there is no right to recover on Count One by Augusta against Sales, there could be none under Count Three.

The termination of the same dealership franchise agreements, attached to the affidavits, is the alleged wrong for which recovery is sought in each of the three counts. The facts in connection with this are:

In 1954 Clarence L. Ehrlich and Robert E. Wills, as partners in the name of United Nash Motors, secured a Nash dealership at Augusta, Georgia. Shortly thereafter, American Motors Corporation succeeded Nash-Kelvinator, and the dealership franchise agreement was between American Motors Sales Corporation and the partnership, the name of which was changed from United Nash Motors to Augusta Rambler Sales.

In 1959 Augusta Rambler Sales, Inc., was created with the individuals who are plaintiffs as stockholders, and on August 13, 1959, a dealer franchise agreement was made between American Motors Sales Corporation and Augusta Rambler Sales, Inc. This relationship continued until December 21, 1961, when the dealer franchise agreement was terminated pursuant to notice dated September 20, 1961.

The dealer franchise agreement obligated the dealer to "at all times maintain and actually employ in his business such amounts of net working capital as the Zone shall from time to time deem necessary for the proper operation of such business in accordance with the reasonable standards set up by the Zone".

On August 13, 1959, when the first dealership franchise agreement was made with Augusta, the dealer acknowledged in writing that it was deficient in working capital. On July 15, 1960, Augusta agreed that $73,500.00 was a reasonable standard for the successful operation of a dealership of its size, and agreed to meet that standard no later than December 31, 1960. On November 18, 1960, the President of Augusta proposed by June 30, 1961, to increase the working capital by $21,000.00 through retention of profits. This was not done since on July 31, 1961, the company's original capital was impaired to the extent of several thousand dollars, there being no profits to retain.

In March of 1961 Clarence L. Ehrlich, President of Augusta, applied to defendant for a capital loan (on February 28, 1961, the deficiency in working capital stood at $52,521.00) and on April 4, 1961, he acknowledged in a letter, "the working capital condition, I will agree, is much too low for an agency in our market potential". On April 18, 1961, the Zone Manager of Sales offered to make recommendation for a capital loan on the basis of a loan of two dollars for every dollar of capital contributed by the owners of the company up to $30,000.00, and asked to hear from Ehrlich that he had "raised these funds, so that the writer may in turn make recommendations for a capital loan". On April 28, 1961, Clarence Ehrlich advised that arrangements had been made to put a total of $12,000.00 into the operation of the business within thirty days, but this was never done for the capital deficiency stood at $52,521.00 as of February 28, 1961, and was still $51,-130.00 on June 30, 1961. On August 15, 1961, Clarence Ehrlich wrote defendant's Zone Manager recognizing the in-

adequacy of the working capital and advising that he had exhausted all avenues of procuring a lender for a capital loan.

Upon receipt of that letter, rather than let the current dealership franchise expire, defendant's Zone Manager decided to recommend a refranchisement and visit the dealer. This was done on August 23 and 24, 1961, and again Clarence Ehrlich advised that they had been unable to provide additional capital, and Mr. Daley, Zone Manager for Sales, advised that, in his opinion, American Motors would not participate in a capital loan unless the dealership contributed a part of the capital from an investment standpoint. Mr. Daley made it clear that unless additional working capital was forthcoming, the dealership would not be continued, but he did agree to give Clarence Ehrlich a week to consider the matter. On August 31, 1961, Daley talked to Clarence Ehrlich on the telephone and was advised that the owners of Augusta had been unable to secure additional capital. It was not until then that Daley recommended cancellation of the dealer franchise agreement upon ninety days notice, and in accordance with Paragraph 25(c) of the agreement. Notice was given on September 20, 1961, and the franchise was cancelled on December 21, 1961, upon the expiration of the ninety-day notice.

It now appears from the evidence elicited from both Clarence Ehrlich and Louis Ehrlich that despite all their written promises, the owners of Augusta never seriously intended to put up any additional working capital. It is clear that they could have done so if they had desired, since Mr. Louis Ehrlich was ready, willing and able to put up additional working capital if his son, Clarence Ehrlich, had asked him to do so.

The question presented for determination in Count One is whether the dealer can recover under common law for a breach of contract where the automobile franchise agreement provides that the dealer shall "at all times maintain and actually employ in his business such amounts of net working capital as the Zone shall from time to time deem necessary for the proper operation of such business in accordance with the reasonable standards set up by the Zone" and where the contract agreement also provides for the termination of the agreement for failure of the dealer to do so if the sales company breached the contract by terminating it for failure to provide such a working capital.

The question is, under the law of Georgia, can a dealer recover from a manufacturer under the terms of a franchise agreement where the manufacturer terminates the agreement according to its terms for failure of the dealer to provide adequate capital, where such agreement has been entered into by the dealer fully cognizant of the terms of the contract. Under such conditions, we do not think that there can be a recovery, in an action for breach of contract, by the dealer against the manufacturer.

A manufacturer has a right to insure that a dealer has adequate working capital. The manufacturer, Sales in this instance, had a right to insist that Augusta be maintained in a competitive position with other dealers throughout the trade area of Augusta. The penetration made by Augusta into the market in the trade area was not keeping pace with the penetration of the market either at a national or at a zone level. Certainly, a manufacturer has the right to expect its dealer to provide a suitable outlet for its products. If the outlet is unsuitable for lack of capitalization, the dealer has thereby failed to provide a proper outlet, and such dealer must suffer the consequence that the manufacturer will prefer to channel its products through a more acceptable outlet. Sales had a right to terminate its contract on December 21, 1961, when Augusta failed to properly capitalize as provided in the agreement. Associated Beverages Company, et al. v. P. Ballantine & Sons, 5 Cir., 287 F.2d 261. See also 17 C.J.S. Contracts § 399, page 890: "When so provided by the contract, one party may terminate the contract in case performance by the other is unsatisfactory."

Counsel for Augusta vigorously contend that, because Augusta was under-

capitalized for a period of several years prior to the execution of the last franchise agreement on August 22, 1961, Sales was estopped to deny that its capitalization was now inadequate. Counsel further contend that, under Georgia law, Sales, with its knowledge of Augusta's inadequate capital at the time of the execution of the last franchise agreement on August 22, 1961, was bound by "acquiescence" or "election". Call it what you may—call it estoppel by contract, acquiescence or election on behalf of Sales, there is no showing by Augusta that at the time of the execution of the contract it was not fully aware of the terms of the instrument providing for adequate capitalization, and the evidence clearly demonstrates that the Zone Manager was constantly insisting upon more capital, and that Augusta had acknowledged the inadequacy of the capital structure and promised to remedy the same several days prior to the last franchise agreement. See Davis v. Holt, 105 Ga.App. 125, at p. 132–133, 123 S.E.2d 686, at p. 692–693. Before, at the time of, and subsequent to the execution and delivery of the contract, Augusta promised to procure satisfactory and adequate capitalization for its dealership. The efforts of Sales in seeking compliance with these undertakings were consistent with and in the enforcement of the contractual obligations of Augusta.

From the undisputed evidence, it is clearly apparent that there was no breach of the agreement by Sales and therefore no right of recovery of damages by Augusta under the common law theory as asserted in the first count of their amended complaint.

▮ In the original brief filed by counsel with this Court, Augusta contended that Count One was based upon the breaches of the Rambler and Metropolitan contracts dated August 22, 1961. In a supplementary brief, Augusta contends that Sales is liable for failure to deliver orders taken during the last few months of 1960, under a franchise contract of August 13, 1960. It is also contended that under the contract of 1960, an ex-

cessive number of automobiles, of undesirable colors and models, was shipped.

It is sufficient to answer this contention by pointing out that there is nothing in the contract that obligates the defendant to furnish cars at any particular time, and there is no evidence that any excessive number of cars was shipped, or that any car was ever shipped to plaintiff that was not ordered. Neither is there any evidence that Augusta ever complained to Sales prior to notice of termination concerning any excessive delivery of automobiles.

For the reasons stated above, the defendant's motion for a summary judgment on Count One is hereby granted.

▮ The second count of the complaint is brought under the Automobile Dealers Franchise Act, 15 U.S.C.A. §§ 1221–1225, 1221(e), 1222, by which Act Congress created a new cause of action permitting a dealer to recover damages from manufacturers upon the failure of the manufacturers to act in good faith in terminating or not renewing the dealer's franchise. As was stated in Staten Island Motors, Inc. v. American Motors Sales Corporation, New York Zone, D.C., 169 F.Supp. 378:

"The plain meaning of the Act indicates that the restrictions which it imposes extend only to those dealings between parties wherein coercion or intimidation or threats of the same are involved. This is borne out in the legislative history. It is stated in H.R. 2850, 1956 U.S.Code, Cong., and Admin. News Vol. 3, p. 4596 at page 4603, that 'The term "fair and equitable" as used in the bill is qualified by the terms "so as to guarantee the one party freedom from coercion, intimidation or threats of coercion or intimidation from the other party." In each case arising under this bill, good faith must be determined in the context of coercion or intimidation or threats of coercion or intimidation.' See also Note, 70 Harv.L.Rev. 1239, 1249 (1957)."

A study of the admitted facts and evidence here presented shows clearly the absence of any of the prohibitive acts of coercion or intimidation or threats thereof on the point of Sales toward Augusta.

The case of Woodard v. General Motors Corporation, 298 F.2d 121, decided by the Fifth Circuit Court of Appeals in 1962, discusses in detail the Automobile Dealers Franchise Act. The Woodard case is almost identical in facts with the case at hand. In Woodard the agreement required that the dealer maintain a satisfactory place of business and, once established, that he should not move it without prior written approval of Chevrolet. In the case at hand, the agreement required the dealer to "maintain and actually employ in his business such amounts of net working capital as the Zone shall from time to time deem necessary for the proper operation of such business in accordance with the reasonable standards set up by the Zone."

In the Woodard case the dealer failed to comply with the provisions of the agreement as to location of the business by moving it to another place without written permission of the manufacturer.

In Woodard v. General Motors Corporation, supra, the Court considered the automobile dealer franchise and held:

"An automobile manufacturer is not precluded by the Act from including in its contracts with dealers, as the appellee has done here, requirements that dealers shall provide product representation commensurate with the good will attached to its trade name and facilitate the proper sale and servicing of its motor vehicles. The manufacturer is entitled to bargain for the protection of its good name, to provide for the trade acceptance of its wares, and to have a reasonable expectation that those who are marketing its cars have the facilities for coping with the sales efforts of those who are dealing in the products of competitors. Cf. Best Motor and Implement Co. v. International Harvester Co. supra [5 Cir., 252 F.2d 278]. As is said in the House Report, the Act 'does not prohibit the manufacturer from terminating or refusing to renew the franchise of a dealer who is not providing the manufacturer with adequate representation. Nor does the bill curtail the manufacturer's right to cancel or not to renew an inefficient or undesirable dealer's franchise.' H.R.Rep. No. 2850, 84th Cong. 2d Sess. 9. We do not think that the good faith requirement, whether viewed in or outside of the context of coercion, prevents a manufacturer from terminating a contract with a dealer where the dealer has, over a long period of time, violated a valid and material clause of the contract and has failed to comply with the continuing insistence of the manufacturer upon performance. And it is shown, we think, by the quoted portions of the House Report, that there was no legislative intent that the prohibited coercion should include a threat of cancellation if there should be a prolonged failure on the part of the dealer to heed the recommendations or yield to the persuasion of the manufacturer that the dealer make a bona fide effort to comply with its undertakings."

It appears to the Court, from the affidavits submitted by the defendant and admissions of the plaintiff, that Sales made every effort to exhort Augusta into providing adequate capital, even offering to supply a substantial amount of capital on a loan to Augusta, and then, in exasperation in the interest of its product, finally terminated the contract as provided by its terms.

Applying the facts in this case to the rulings of Woodard v. General Motors Corporation, 5 Cir., 298 F.2d 121; Staten Island Motors, Inc. v. American Motors Sales Corporation, D.C., 169 F.Supp. 378; and Leach v. Ford Motor Company, D.C., 189 F.Supp. 349, the motion for summary judgment for the defendant on Count Two is granted.

Count Three of the complaint being by individual plaintiffs on the theory that by implication they were parties to the agreement based on Count One, and this Court having held that there is no right of Augusta to recover from Sales on Count One and having granted a motion for a summary judgment for the defendant Sales on Count One, there can be no right to recover by the individual plaintiffs under Count Three. The motion for summary judgment of defendant on Count Three is hereby granted.

In view of the rulings of this Court granting the motion for summary judgment of defendant on Counts One, Two, and Three of plaintiff's complaint, it becomes unnecessary to rule on the motion of the plaintiff for a summary judgment on Count One.