814 F.2d 90
 1987-1 Trade Cases 67,480, 7 Fed.R.Serv.3d 138
 EMPIRE VOLKSWAGEN INC., Empire Volkswagen Inc. d/b/a Empire
Porsche/Audi Inc., Empire City Motors Inc., Donald
Amerling and Susanne Properties Corp.,
Plaintiffs-Appellants,
v.
WORLD-WIDE VOLKSWAGEN CORP., Defendant-Appellee.
 No. 464, Docket 86-7645.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 1, 1986.
Decided March 12, 1987.
 
 Lawrence M. Rosenstock, New York City (Allan J. Kirschner, Carl T. Peluso, Robinson, Perlman & Kirschner, P.C., New York City, of counsel), for plaintiffs-appellants.
 Arthur S. Linker, New York City (Arnold I. Roth, Alan L. Doochin, Rosenman Colin Freund Lewis & Cohen, New York City, of counsel), for defendant-appellee.
 Before FEINBERG, Chief Judge, NEWMAN and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Empire Volkswagen, Inc., Empire City Motors, Inc. and Susanne Properties, companies formerly associated with Volkswagen-Porsche-Audi and Ford dealerships in Poughkeepsie, New York, and Donald Amerling, principal owner of those companies, appeal from a judgment entered in the United States District Court for the Southern District of New York (Kram, J.) in favor of defendant-appellee World-Wide Volkswagen, Inc. ("World-Wide"). Appellants' complaint asserted federal Automobile Dealers' Day in Court Act ("Dealers' Act") claims, see 15 U.S.C. Sec. 1221 et seq. (1982), federal and state antitrust claims, and various pendent state law claims. World-Wide asserted various counterclaims.
 
 
 2
 In an amended order dated February 27, 1986, Judge Kram granted summary judgment dismissing appellants' federal and state antitrust claims. She held that only Empire Volkswagen had standing to assert a claim under the Dealers' Act but dismissed that claim insofar as it alleged that World-Wide's wrongful conduct was in response to Empire Volkswagen's efforts to sell Ford automobiles from a Volkswagen-Porsche-Audi showroom. Judge Kram denied World-Wide's summary judgment motion regarding Empire Volkswagen's other Dealers' Act claims, as well as the pendent state law claims and World-Wide's counterclaims.[1]
 
 
 3
 Appellants then moved, pursuant to Fed.R.Civ.P. 41(a)(2), for judgment dismissing all remaining claims against World-Wide and granting World-Wide's counterclaims. On appeal, they press their Dealers' Act and antitrust claims and seek to "revive" those claims voluntarily dismissed in the district court. We affirm.
 
 I. BACKGROUND
 
 4
 Empire Volkswagen, principally owned by appellant Donald Amerling, operated Volkswagen and Porsche-Audi dealerships in Poughkeepsie, New York until the dealerships were terminated in 1981. Empire City Motors, an affiliated company also principally owned by Amerling, operated a Ford dealership at the same location and in the same facility as Empire Volkswagen, beginning in May 1977. Susanne Properties, another company wholly owned by Amerling, owned the land and buildings housing the Volkswagen-Porsche-Audi and Ford dealerships. World-Wide is the exclusive distributor of Volkswagens, Porsches and Audis in the New York, New Jersey and Connecticut area.
 
 
 5
 In June 1975, Amerling accepted the offer of Rainer Josenhanss, an executive vice president of World-Wide, to become World-Wide's Volkswagen and Porsche-Audi dealer for the Poughkeepsie area. Amerling contends that World-Wide agreed to allow Empire Volkswagen to operate both the Volkswagen dealership and the Porsche-Audi dealership from a single facility. However, as a formality, Amerling signed a letter, dated September 12, 1975, indicating his interest in the Porsche-Audi dealership and promising to relocate the Porsche-Audi dealership to a separate facility by December 31, 1976.
 
 
 6
 Empire Volkswagen and World-Wide ultimately signed two dealership agreements, one for the Volkswagen franchise and one for the Porsche-Audi franchise. Amerling signed the agreements in his capacity as president of Empire Volkswagen. The agreements recited, inter alia, that the franchises would terminate upon Amerling's death, that Amerling would act as general manager, that he was a 90% beneficial owner of the dealerships and that he was president and treasurer of the dealerships.
 
 
 7
 In the fall of 1975, Empire Volkswagen began operating its Volkswagen and Porsche-Audi dealerships in a single sales and service facility. In December 1976, Amerling applied for a Ford franchise and offered to use the assets and facilities of his existing dealerships in connection with the Ford franchise. This would constitute "dualing," i.e., housing multiple, competing dealerships in a single facility.
 
 
 8
 World-Wide adamantly opposed dualing franchise facilities. At dealer meetings, Josenhanss warned dealers against dualing, stating that dealers who dualed their franchises could expect to get fewer automobiles than single-line dealers. However, as appellants concede, World-Wide's definition of dualing was confined to housing two or more competing franchises in a single facility. World-Wide had no objection to dealers owning and operating multiple franchises so long as they maintained a separate showroom for World-Wide's products.
 
 
 9
 Amerling informed World-Wide of his plans to become a Ford dealer in February 1977, at which time Josenhanss indicated that such an arrangement was unacceptable. Nevertheless, Amerling decided to become a Ford dealer and organized Empire City to act as the corporate franchise holder for Ford. In May 1977, Empire City commenced operation as a Ford dealership, using the same showroom, service facility and parts department used by the Volkswagen-Porsche-Audi dealership. The combined dealership was known as Empire City Motors.
 
 
 10
 Although the Volkswagen and Porsche-Audi dealership agreements do not prohibit dualing per se, both agreements provide that
 
 
 11
 [Empire Volkswagen] will see to it that all of its Premises meet the applicable provisions of this Agreement, the Operating Standards for [Volkswagen and Porsche-Audi] Dealers and such standards as [World-Wide] may prescribe from time to time (particularly as they relate to buildings in the recommended [Volkswagen and Porsche-Audi] style, size, layout, installation, equipment, identification by [Volkswagen and Porsche-Audi] Signs and parking facilities)....
 
 
 12
 Joint App. at 2043 (Volkswagen Dealer Agreement); id. at 2088 (Porsche-Audi Dealer Agreement). "Premises" is defined in both agreements to include salesrooms. Id. at 2063, 2109. The agreements also state that World-Wide would provide a fair and equitable allocation of its products among its dealers.
 
 
 13
 In May 1977, Josenhanss sent Amerling a letter objecting strenuously to the addition of the Ford dealership, pointing out the deficiencies of the existing Amerling dealerships, and suggesting that Empire Volkswagen should voluntarily yield its franchises if the deficiencies were not corrected. Empire Volkswagen's allocation of cars from World-Wide was reduced following that letter, and continued to be reduced for the next three years. Additionally, Josenhanss sent Amerling a letter dated June 22, 1977, renewing World-Wide's demand for the construction of a separate Porsche-Audi facility, which Amerling, as president of Empire Volkswagen, had promised, in his September 12, 1975 letter, to provide.
 
 
 14
 In July 1977, appellants objected to the reduced allocation of automobiles. After a series of meetings, World-Wide and Empire Volkswagen agreed that World-Wide would provide an increased allocation of vehicles and that appellants would construct a separate Volkswagen-Porsche-Audi showroom adjacent to the existing facility. World-Wide also agreed to withdraw its demand for a separate Porsche-Audi facility. This agreement was memorialized in a letter dated January 25, 1978, signed by Amerling. The new showroom never was built, and the allocation of cars to Empire Volkswagen never was increased. World-Wide objected to proposals for the renovation of existing facilities and, according to Amerling, at one point suggested that if he resigned the Ford franchise, he would not need to build a new facility.
 
 
 15
 The parties agree that prior to dualing, Empire Volkswagen displayed ten or eleven Volkswagen, Porsche and Audi vehicles, and after dualing only five such vehicles were displayed, along with five Ford models. Amerling claims that five vehicles were more than sufficient to display the World-Wide line, and further alleges that the outdoor area provided added display potential for appellee's automobiles. World-Wide contends that Empire Volkswagen's post-dualing display of World-Wide products was wholly inadequate.
 
 
 16
 In May 1980, the dealership was destroyed by a fire, apparently set by arsonists. Appellants collected the insurance proceeds and desired to rebuild. World-Wide refused to deal with Amerling, asserting that his father was then in control of the dealership. The dealership never was rebuilt, and was closed by Amerling's father in February 1981.
 
 
 17
 In August 1981, appellants commenced this suit against World-Wide, asserting several Dealers' Act claims, federal antitrust claims, state law claims relating to termination of automobile franchise agreements, state antitrust claims, and state law claims for breach of contract and tortious interference with contractual relations. World-Wide asserted minor counterclaims relating to money due and owing. After extensive discovery, World-Wide moved for summary judgment.
 
 
 18
 In January 1986, Judge Kram granted in part and denied in part World-Wide's summary judgment motion. She granted the motion dismissing the Dealers' Act claims against all appellants save Empire Volkswagen, holding that the other appellants did not have standing to sue under the Act. Additionally, she determined that, in order to state a claim under the Dealers' Act, Empire Volkswagen must show that World-Wide had made a wrongful demand on it, enforced by threats of coercion or intimidation. Judge Kram then granted the summary judgment motion as to Empire Volkswagen's claims under the Dealers' Act insofar as they related to the dualing issue, but denied the motion as to other Dealers' Act claims not on appeal. Judge Kram granted the motion for summary judgment on appellants' federal and state antitrust claims. The motion was denied regarding appellants' other state law claims, but appellants complain that Judge Kram excluded the dualing issue from consideration in connection with those claims. Judge Kram found, as a matter of law, that Ford and Volkswagen were competitive lines of cars, and that Empire Volkswagen's showroom was inadequate to accommodate sales of both lines of cars. Also denied was the motion with respect to appellee's counterclaims.
 
 
 19
 Appellants, believing that Judge Kram's decision unduly limited their remaining claims, decided that there was insufficient evidence to proceed to trial. They moved, under Fed.R.Civ.P. 41(a)(2), for a judgment dismissing all remaining claims against appellee, and granting appellee's counterclaims. This appeal followed the entry of judgment disposing of all claims in the district court.
 
 II. DISCUSSION
 A. Rule 41(a)(2) Motion
 
 20
 As a preliminary matter, we are compelled to comment briefly on appellants' troubling Rule 41(a)(2) motion for voluntary dismissal. Appellants believed that Judge Kram's partial summary judgment "effectively disposed of" their case, and elected to move for voluntary dismissal of their remaining claims. On this appeal, they ask us to reverse the district court's partial summary judgment and to resuscitate the majority of claims voluntarily dismissed in the district court, without the "restrictions" allegedly imposed on those claims by Judge Kram.
 
 
 21
 It is well settled that a plaintiff who seeks and receives a voluntary dismissal of his action without prejudice usually "cannot maintain or prosecute an appeal from the order of dismissal." Management Investors v. United Mine Workers of America, 610 F.2d 384, 393 (6th Cir.1979); see Allied Air Freight, Inc. v. Pan American World Airways, Inc., 393 F.2d 441, 444 (2d Cir.), cert. denied, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968); see also United States v. Babbitt, 104 U.S. (14 Otto) 767, 26 L.Ed. 921 (1882); Evans v. Phillips, 17 U.S. (4 Wheat.) 73, 4 L.Ed. 516 (1819). Generally, voluntary dismissals pursuant to Rule 41(a)(2) are not reviewable on appeal. Yoffe v. Keller Indus., Inc., 580 F.2d 126, 129 (5th Cir.1978), cert. denied, 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979). When the dismissal is with prejudice, however, plaintiffs have been allowed, in limited circumstances, to appeal from a voluntary dismissal when the plaintiffs' "solicitation of the formal dismissal was designed only to expedite review of [a prior] order which had in effect dismissed [plaintiffs'] complaint." Raceway Properties, Inc. v. Emprise Corp., 613 F.2d 656, 657 (6th Cir.1980); see Bogorad v. Eli Lilly & Co., 768 F.2d 93 (6th Cir.1985). Such a procedural maneuver normally is employed when the district court has dismissed the case pursuant to Fed.R.Civ.P. 41(b). See United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).
 
 
 22
 Appellants have demonstrated no circumstances that would justify deviation from the general rule that an appeal from a judgment entered upon a voluntary dismissal with prejudice does not bring up for review any matters that were voluntarily dismissed. The question to resolve, then, is whether on this appeal appellants may obtain review of the adverse ruling made before they sought voluntary dismissal--Judge Kram's grant of partial summary judgment. In Studstill v. Borg Warner Leasing, 806 F.2d 1005 (11th Cir.1986), the Eleventh Circuit recently was confronted with a similar Rule 41(a)(2) motion. The litigant in Studstill voluntarily had dismissed her Title VII claim after an adverse summary judgment ruling on her pendent state tort claims. The Studstill court held that
 
 
 23
 [a]fter the summary judgment the plaintiff had two choices. She could have continued to litigate the Title VII claim, and had an ultimate appeal of all rulings, or she could have abandoned the Title VII claim in exchange for the right to an immediate appeal of the ruling on the tort claims. Having opted for the latter, she may not now have both.
 
 
 24
 Id. at 1008. We agree with the reasoning of the Eleventh Circuit. Because Judge Kram has entered a final judgment in this case, appellants may seek review of her partial summary judgment order. Therefore, appellants may contest, and we will consider, only those portions of Judge Kram's February 27, 1986 amended order decided adversely to them. Cf. Estate of Young v. Williams, 810 F.2d 363, 365-66 (2d Cir.1987) (on appeal from judgment entered after defendant elected not to attend trial, defendant entitled to obtain review of prior adverse ruling rejecting res judicata defense).
 
 
 25
 The danger inherent in electing voluntarily to dismiss a case because of a prior adverse ruling is well illustrated in this case: Appellants rely exclusively on their interpretation of Judge Kram's partial summary judgment order as an effective dismissal of their entire complaint. Based on our evaluation of the order, however, we find scant support for appellants' overbroad interpretation. As a consequence of their Rule 41(a)(2) motion, appellants have lost forever the opportunity to prove that World-Wide violated the Dealers' Act by seeking enforcement of Empire Volkswagen's December 31, 1976 promise to build a separate Porsche-Audi showroom, by objecting to discounting, or by treating Amerling's father as principal owner of Empire Volkswagen.[2] In addition, appellants are precluded from contesting the judgment in favor of World-Wide on the counterclaims, and from arguing the merits of their state law claims for intentional interference with contractual relations, breach of contract and violation of the New York State Automobile Dealers Act, N.Y.Gen.Bus.Law Sec. 197 (McKinney 1968 & Supp.1987). See 627 F.Supp. at 1211-12. We will therefore focus solely upon appellants' Dealers' Act claim in regard to the dualing issue and appellants' antitrust claims.
 
 B. Dealers' Act Claim
 
 26
 Appellants contend that World-Wide's insistence that Empire Volkswagen cease dualing constituted a "wrongful demand" for which World-Wide should be held accountable under the Dealers' Act. They further contend that World-Wide's coercive conduct in reducing their allocation of automobiles is sufficient to impose liability under the Act. We reject those contentions.
 
 
 27
 The Dealers' Act provides that an automobile dealer may recover damages against an automobile manufacturer that fails to "act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise." 15 U.S.C. Sec. 1222 (1982). Good faith is defined as the duty of the dealer and the manufacturer to act
 
 
 28
 in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.
 
 
 29
 15 U.S.C. Sec. 1221(e). The term "good faith," in Dealers' Act terms, has a narrow, restricted meaning. Autohaus Brugger, Inc. v. Saab Motors, Inc., 567 F.2d 901, 911 (9th Cir.), cert. denied, 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978). In order to succeed on a Dealers' Act claim, the dealer must demonstrate that the manufacturer exercised coercion or intimidation or made threats against the dealer, Autowest, Inc. v. Peugeot, Inc., 434 F.2d 556, 561 (2d Cir.1970), to achieve an improper or wrongful objective, Quarles v. General Motors Corp., 597 F.Supp. 1037, 1041 (W.D.N.Y.1984), aff'd on opinion below, 758 F.2d 839 (2d Cir.1985); accord R.D. Imports Ryno Indus., Inc. v. Mazda Distribs. (Gulf), Inc., 807 F.2d 1222 (5th Cir.1987); Cabriolet Porsche Audi, Inc. v. American Honda Motor Co., 773 F.2d 1193, 1210 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); Howard v. Chrysler Corp., 705 F.2d 1285 (10th Cir.1983); Fray Chevrolet Sales, Inc. v. General Motors Corp., 536 F.2d 683 (6th Cir.1976). As we stated in Autowest, "more is required than coercion and subsequent termination for failure to submit, for otherwise the manufacturer would be precluded from insisting upon reasonable and valid contractual provisions." Autowest, 434 F.2d at 561 (citing Woodard v. General Motors Corp., 298 F.2d 121 (5th Cir.), cert. denied, 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962)). Failure to act in good faith under the Dealers' Act can be found only "where there is evidence of a wrongful demand enforced by threats of coercion or intimidation." McDaniel v. General Motors Corp., 480 F.Supp. 666, 676 (E.D.N.Y.1979), aff'd mem., 628 F.2d 1345 (2d Cir.1980), quoted in Quarles, 597 F.Supp. at 1041; see H.D. Corp. v. Ford Motor Co., 791 F.2d 987, 990 (1st Cir.1986); Gregoris Motors v. Nissan Motor Corp. in U.S.A., 630 F.Supp. 902, 911-12 (E.D.N.Y.1986). We therefore turn to an examination of whether World-Wide's demand that Empire Volkswagen cease dualing was wrongful for purposes of the Dealers' Act.
 
 
 30
 The original dealership agreements provide that World-Wide may from time to time prescribe standards for Empire Volkswagen's facilities, including provisions relating to the style, size and layout of showrooms. Joint App. at 2043, 2063 (Volkswagen Dealer Agreement); id. at 2088, 2109 (Porsche-Audi Dealer Agreement). At the time Empire Volkswagen commenced operations as a Volkswagen-Porsche-Audi dealership, approximately ten World-Wide automobiles were displayed in its showroom. Joint App. at 563. It is undisputed that after the addition of the Ford franchise, only five World-Wide automobiles were on display. Id. at 567. In light of the fact that World-Wide retained the right to control the size and layout of Empire Volkswagen's showrooms, it can hardly be considered unreasonable, let alone wrongful, for World-Wide to protest a fifty percent cutback in the showroom space available for display of its products, and to demand a return to the status quo ante. Therefore, we hold that World-Wide's attempt to ensure that Empire Volkswagen continue to represent adequately World-Wide's automobiles in the franchisee's showroom, control of which World-Wide retained in the original franchise agreements, did not constitute a wrongful demand for purposes of the Dealers' Act. See R.D. Imports, 807 F.2d at 1228 (rejecting dealer's claim of wrongful demand to cease dualing--manufacturer's actions not violative of Dealers' Act when manufacturer "merely suggest[s] ways for [dealer] to maintain or increase its allocation of cars"); Autohaus Brugger, 567 F.2d at 911 (supplier not prohibited from terminating distributor for inadequacy of representation), cited with approval in State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 413 (10th Cir.1984); Ed Houser Enters., Inc. v. General Motors Corp., 595 F.2d 366, 370 (7th Cir.1978) (demands to correct deficiencies in facility not wrongful when franchise agreement mandates standards to be met); cf. Cabriolet Porsche Audi, Inc., 773 F.2d at 1210-11 (manufacturer's proposal to increase dealer's allotment of cars if dealer ceased dualing not wrongful).
 
 
 31
 In addition, on the facts properly before us, the January 1978 agreement between the parties was a valid contractual undertaking, of which World-Wide was entitled to seek enforcement. World-Wide's grant of the Porsche-Audi franchise to Empire Volkswagen expressly was made contingent upon Empire Volkswagen's promise to build a separate facility for Porsche-Audi automobiles. See Joint App. at 1872. As discussed above, appellants are barred from contesting World-Wide's good faith in seeking to enforce the promise by virtue of their Rule 41(a)(2) motion. World-Wide waived its requirement that a separate Porsche-Audi facility be built as part of the January 1978 compromise agreement between the parties. By the terms of the compromise, World-Wide agreed to provide Empire Volkswagen with an increased allocation of vehicles in exchange for Empire Volkswagen's promise to construct a separate Volkswagen-Porsche-Audi facility. Joint App. at 1197-98. Thus, the January 1978 agreement contained a specific promise by Empire Volkswagen to construct a separate facility for World-Wide's vehicles. In light of the original franchise agreements, the undisputed facts in the record, and World-Wide's agreement to forgo its contractual right to a separate Porsche-Audi facility, we hold that Empire Volkswagen's obligation to construct a separate Volkswagen-Porsche-Audi facility was reasonable and, therefore, that World-Wide properly asserted its legal right to enforce that contractual provision. See Autowest, 434 F.2d at 561 (use of coercion to enforce valid contractual provision not wrongful under the Dealers' Act); see also Gage v. General Motors Corp., 796 F.2d 345, 351 (10th Cir.1986) (for purposes of the Dealers' Act, exercise of legal rights cannot amount to coercion, intimidation or threats as a matter of law). Whether or not the showroom was too small in fact, it was reasonable for World-Wide to insist, even by "coercive" means, see Autowest, 434 F.2d at 561, on compliance with the contractual obligation to build a separate facility.[3] See Ed Houser Enters., 595 F.2d at 370; Kotula v. Ford Motor Co., 338 F.2d 732, 738-39 (8th Cir.1964) (no violation of Dealers' Act if termination results from dealer failing to comply with contractual undertakings), cert. denied, 380 U.S. 979, 85 S.Ct. 1333, 14 L.Ed.2d 273 (1965); Milos v. Ford Motor Co., 317 F.2d 712, 717-18 (3d Cir.) (demanding compliance with contractual promise to expand facilities not wrongful), cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 125 (1963); Woodard v. General Motors Corp., 298 F.2d 121, 128 (5th Cir.) (manufacturer not guilty of bad faith under Dealers' Act when it terminates a dealership for long-term violation of valid contractual provision), cert. denied, 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962); see also Conroy Datsun, Ltd. v. Nissan Motor Corp. in U.S.A., 506 F.Supp. 1051, 1057-58 (N.D.Ill.1980) (demand to correct facility deficiencies pursuant to written agreement not wrongful); cf. Shor-Line Rambler, Inc. v. American Motor Sales Corp., 543 F.2d 601 (7th Cir.1976) (manufacturer's unreasonable and unrealistic demands to build new facilities, increase credit and make extensive personnel changes held wrongful). See generally Annot., 54 A.L.R. Fed. 314, 320-23 (1981 & Supp.1986). Our determination that World-Wide's demand was not wrongful for purposes of the Dealers' Act obviates the need to address appellants' various claims of standing under the Act.
 
 C. Antitrust Claims
 
 32
 Appellants have elected to pursue only their "exclusive dealing" antitrust claims. They contend that World-Wide prohibited them, as well as other dealers, from maintaining dual franchises in violation of provisions of the Sherman Act, 15 U.S.C. Sec. 1 (1982), and the Clayton Act, 15 U.S.C. Sec. 14 (1982). The district court granted summary judgment in favor of World-Wide on these claims. We agree with Judge Kram's analysis.
 
 
 33
 Appellants have made no showing that World-Wide's requirement that Empire Volkswagen sell Ford products from a separate facility was proscribed by the Sherman and Clayton Acts. Appellants failed entirely to demonstrate the existence of an exclusive dealing arrangement. See White & White, Inc. v. American Hosp. Supply Corp., 540 F.Supp. 951, 1028 (W.D.Mich.1982) (no exclusive arrangement found when buyer retains freedom to purchase product from sellers of his own choosing), rev'd on other grounds, 723 F.2d 495 (6th Cir.1983). There is no material dispute that World-Wide did not require Empire Volkswagen to purchase only World-Wide products. World-Wide merely required Empire Volkswagen to sell other manufacturers' products from a separate salesroom facility. In addition, appellants failed entirely to set forth a triable issue of fact as to whether the limitation imposed by World-Wide would "substantially lessen competition or tend to create a monopoly in any line of commerce," 15 U.S.C. Sec. 14, or foreclose competition "in a substantial share of the line of commerce affected," Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 328, 81 S.Ct. 623, 628, 5 L.Ed.2d 580 (1961), as required by the Clayton Act. Neither did appellants show that World-Wide was engaged in a contract, combination, or conspiracy with other distributors, see Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984), or that World-Wide's actions would have an injurious market impact, R.D. Imports, 807 F.2d at 1226, as required by the Sherman Act. Under the circumstances, Judge Kram's summary judgment in favor of World-Wide on appellants' exclusive dealing antitrust claims was well justified.[4]
 
 III. CONCLUSION
 
 34
 For the foregoing reasons, we affirm the district court's judgment of dismissal. We hold that appellants' Dealers' Act claim regarding World-Wide's objection to dualing properly was dismissed on the ground that the original agreements between the parties, as modified by the January 1978 agreement, establish that World-Wide's demand was not wrongful.
 
 
 35
 We hold that appellants' antitrust claims properly were dismissed on the grounds delineated by the district court. We have examined carefully appellants' other claims and find them to be without merit.
 
 
 
 [1]
 The district court's opinion is reported at 627 F.Supp. 1202 (S.D.N.Y.1986)
 
 
 [2]
 These claims were found by the district court to contain triable issues of fact, and World-Wide's motion for summary judgment was denied as to each of them. See 627 F.Supp. at 1211
 
 
 [3]
 Because we base our disposition of this appeal on the contractual agreements between the parties, we need not review the district court's findings of fact regarding the size of the showroom and the competition between Ford and Volkswagen automobiles
 
 
 [4]
 It is not entirely clear from appellants' brief whether they are seeking review of the district court's dismissal of their state antitrust claim. See Brief of Plaintiffs-Appellants at 43-45. However, to the extent that such review is requested, appellants' state antitrust claim under the Donnelly Act, N.Y.Gen.Bus.Law Sec. 340 (McKinney 1968 & Supp.1987), tracks their federal antitrust claim under the Sherman Act and properly was dismissed. See Hsing Chow v. Union Cent. Life Ins. Co., 457 F.Supp. 1303, 1308 (E.D.N.Y.1978); Harlem River Consumers Coop. Inc. v. Associated Grocers of Harlem, Inc., 408 F.Supp. 1251, 1283 (S.D.N.Y.1976)