**ZENO BUICK–GMC, INC.; Larry Zeno; and Marcia Zeno, Plaintiffs,**

**v.**

**GMC TRUCK AND COACH; General Motors Acceptance Corporation; GMC–Buick; and Eddie Rayborn, Defendants.**

**Civ. No. PB–C–90–281.**

United States District Court, E.D. Arkansas, Pine Bluff Division.

April 24, 1992.

Bill R. Holloway, McGehee, AR, John P. Lewis, Hot Springs, AR, for plaintiffs.

David L. Williams, Rose Law Firm, Little Rock, AR, Edward C. Wolfe, General Motors Corp., Detroit, MI, for GMC Truck and Coach.

E. Guy Amsler, Jr., William H. Edwards, Jr., Barber, McCaskill, Amsler, Jones & Hale, P.A., David L. Williams, Rose Law Firm, Little Rock, AR, for General Motors Acceptance Corp.

## ORDER

EISELE, District Judge.

Before the Court are General Motors Corporation's (GM) Motion for Summary Judgment, Docket Entry No. 71; General Motors Acceptance Corporation's (GMAC) Motion for Dismissal and Summary Judgment, Docket Entry No. 72; General Motors Acceptance Corporation's three Motions in Limine, Docket Entry Nos. 94, 96 and 98; the plaintiffs' Motion to Strike GMAC's Reply to Zenos' Response to Motion for Summary Judgment, Docket Entry No. 103; and the plaintiffs' Motion for Voluntary Non–Suit. For the reasons set forth below, GM's Motion for Summary Judgment will be granted in part and denied in part. GMAC's Motion for Dismissal and Summary Judgment will be granted. GMAC's Motions in Limine and the plaintiffs' Motion to Strike will be denied as moot. Finally, the plaintiffs' Motion for Voluntary Non–Suit will be granted.

## I. BACKGROUND

Beginning in March, 1976, plaintiff Zeno Buick–GMC, Inc. (and its predecessor Dermott Motor Company) operated an automobile dealership in Dermott, Arkansas. Pursuant to a GM Dealer Sales and Service Agreement, Zeno Buick–GMC, Inc. sold two lines of GM vehicles, GMC–Buick and GMC–Trucks. Plaintiff Larry Zeno owns 100% of the stock of Zeno Buick–GMC, Inc. Plaintiff Marcia Zeno is an employee of Zeno Buick–GMC, Inc. and is the wife of Larry Zeno.

On May 31, 1990, the plaintiffs filed this action alleging violations of the Automobile Dealers' Day in Court Act (ADDCA), 15 U.S.C. § 1221 *et seq.* The plaintiffs also alleged pendent state law claims for the tort of intentional interference with a business expectancy; the tort of intentional infliction of emotional distress; breach of the covenant of good faith and fair dealing; and violations of the Arkansas Motor Vehicle Commission Act, specifically Ark.Code Ann. § 23–112–403.

After extensive discovery, defendants GM and GMAC filed their motions for summary judgment. Separate defendant Eddie Rayborn, proceeding *pro se,* has not joined the summary judgment motions. The plaintiffs have responded to and oppose the motions.

## II. THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

■ The United States Supreme Court stated in *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), that summary judgment motions "may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 885, 110 S.Ct. at 3187. The inferences to be drawn from the

underlying facts in the materials presented must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam); *Curran v. Merrill Lynch, Pierce, Fenner and Smith,* 622 F.2d 216, 224 (6th Cir.1980).

In *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated that in the summary judgment stage, the role of the district court is not to weigh the evidence and determine its truth, but rather to determine whether there is any genuine issue for trial. "There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249, 106 S.Ct. at 2511. Finally, the Supreme Court held that once a party has carried its burden under Rule 56, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See Green v. St. Louis Housing Auth.,* 911 F.2d 65, 68 (8th Cir.1990).

## III. PRELIMINARY ISSUES

The Court will first address the preliminary issues of the individual plaintiffs' standing to sue under the ADDCA and the effect on defendant GM of the actions of defendant Eddie Rayborn.

### A. Standing of the Individual Plaintiffs under the ADDCA

■ The defendants contend that the individual plaintiffs, Lary and Marcia Zeno, do not have standing to sue under the ADDCA. Specifically, the defendants contend that the corporation, Zeno Buick–GMC, Inc, is the only proper plaintiff under the ADDCA.

In *Olson Motor Co. v. General Motors Corp.,* 703 F.2d 284 (8th Cir.1983), the Eighth Circuit Court of Appeals discussed this issue at length:

The parties agree that the applicable statute provides that an automobile dealer is a person or entity "operating under the terms of a franchise." 15 U.S.C. § 1221(c). Courts have held that where the dealership is doing business in the corporate form and where the corporation is the party to the franchise agreement section 1221(c) dictates that "the locus of the right of action is the corporation."

\*    \*    \*    \*    \*    \*

Ray Olsen asserts that the fact that he personally guaranteed the corporation's loans and subsequently suffered losses weighs in favor of finding him a proper party plaintiff. We disagree. The principle was clearly enunciated in *Sherman v. British Leyland Motors, Inc.,* 601 F.2d 429, [439] (9th Cir.1979):

No claim or showing has been made that Vincent during material times did not maintain its corporate existence separate and apart from Sherman, notwithstanding that the latter was president and sloe stockholder of the corporation. The franchise in question was signed by Sherman for and on behalf of the corporation. No rights or responsibilities were reserved expressly in any of the written documents in favor of, or against, Sherman. It is true that the franchisor recognized the importance of Sherman's services and those of his wife to the corporation, and it is also true that by reason of Sherman's guarantee of certain obligations of the corporation to third parties the corporation became indebted to him. But we have concluded that these circumstances do not warrant departure from the general rule of separation of identities, nor afford Sherman standing to bring suit in his individual capacity as a shareholder or creditor on any of the claims asserted in this action.

*Olson,* 703 F.2d at 289–90 (citations omitted).

In the case at bar, Zeno Buick–GMC, Inc. is the party to the Dealer Sales and Service Agreement with GM and the various financing and security agreements with GMAC. Mr. Lary Zeno signed the agreements in his capacity as an officer of the corporation. Both Mr. and Mrs. Zeno signed the Guaranty Agreement with GMAC. After reviewing

the record before it, the Court is convinced that *Olson* is dispositive of this issue. Under the facts of this case, the Zenos, as shareholders and/or guarantors, do not have standing to sue under the ADDCA. The defendants' motions for summary judgment will therefore be granted on this issue.

### B. GM's Responsibility for the Acts of Eddie Rayborn

At all times pertinent to this lawsuit, separate defendant Eddie Rayborn was employed as a district service manager by General Motors Corporation Truck and Coach, a division of defendant GM. Mr. Rayborn's duties included processing warranty claims for dealers, assisting dealers with customer complaints, assisting dealers with employee training and other tasks. Zeno Buick–GMC, Inc. was located in Mr. Rayborn's territory and he had numerous contacts with Mr. and Mrs. Zeno in his capacity as district service manager.

On or about July 20, 1988, Mr. Rayborn approached the Zenos by telephone and requested a personal loan for a term of approximately 60 days. Mr. Rayborn further suggested that if the Zenos required repayment prior to the end of the 60 day term, he would approve a "bogus" warranty claim to repay the loan. The Zenos refused to make the loan and participate in the "bogus" warranty scheme.

In their Third Amended Complaint, Docket Entry No. 78, the plaintiffs make the following allegations in support of their claims against GM under the ADDCA:

6. On or about July 20, 1988, Eddie Rayborn, an employee for GMC Truck, called Zeno Buick and spoke with the Zenos'. The employee requested a personal loan from Zeno. In exchange, he suggested Zeno submit bogus warranty claims and he would "get it covered". Zeno refused to enter into such transactions under any circumstances.

7. Since the incident, and before, GMC Truck and GMC–Buick have refused to honor valid warranty claims from Zeno's customers, have refused to pay rebates due Zeno's customers, have refused to pay proceeds due Zeno in a timely manner, have failed to distribute vehicles to Zeno pursuant to the franchise agreement and have required Zeno to participate in a mandatory advertising program from which Zeno Buick receives no benefit or which it has no vote as to how the fund is utilized.

*Id.* at 4.

In its Motion for Summary Judgment, separate defendant GM argues that the loan proposal and warranty scheme were outside the scope of Mr. Rayborn's actual and/or apparent authority as GM's employee. GM further contends that Mr. Rayborn's loan request was wrongful, was made purely for his own personal gain and was clearly contrary to GM's interests. Therefore, GM argues, Mr. Rayborn's actions concerning the loan request and bogus warranty claim scheme cannot be charged to it as a matter of law.

In *Wal–Stores, Inc. v. Crist,* 855 F.2d 1326 (8th Cir.1988), the Eight Circuit Court of Appeals provided this discussion

Under Arkansas law, which the parties agree applies to this issue, apparent authority is such authority as a principal proclaims or permits, such authority which a principal by lack of care causes or allows, or such authority as a reasonably prudent man using diligence and discretion would naturally suppose. Two elements must be established to support a showing of apparent authority: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) *that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.* If an agent acts within the scope of his apparent authority, his acts bind the principal, whether actually authorized or not, and even in contrary to express direction.

*Id.* at 1331 (citations omitted) (emphasis added).

In the case at bar, Mr. Rayborn's actions with respect to the request for a personal loan from the Zenos, and the suggestion of

using bogus warranty claims to repay the same, are clearly outside the scope of his agency with GM. Moreover, Mr. Zeno admittedly knew the bogus warranty scheme violated GM's policy. Therefore, Mr. Zeno could not reasonably rely on any theory of Mr. Rayborn's apparent authority as GM's agent. In the Court's view, GM gets the better of and prevails on this issue. As discussed in more detail later, however, GM is responsible for other acts performed by Mr. Rayborn in his dealings with the plaintiffs.

## IV. AUTOMOBILE DEALERS' DAY IN COURT ACT CLAIMS

■ The Automobile Dealers' Day in Court Act provides in pertinent part

An automobile dealer may bring suit against any automobile manufacturer engaged in commerce ... and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer ... to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C. § 1222. The ADDCA defines "good faith" as

the duty of each party to any franchise and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: *Provided,* That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

*Id.* at § 1221(e) (Supp.1992).

The automobile manufacturer's duty of good faith under the ADDCA has been narrowly construed. The Second Circuit Court of Appeals, in *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.,* 814 F.2d 90 (2nd Cir.1987), provided this discussion

The term "good faith," in Dealers' Act terms, has a narrow, restricted meaning. In order to succeed on a Dealers' Act claim, the dealer must demonstrate that the manufacturer exercised coercion or intimidation or made threats against the dealer to achieve an improper or wrongful objective. As we stated in [a prior case], more is required than coercion and subsequent termination for failure to submit, for otherwise the manufacturer would be precluded from insisting upon reasonable and valid contractual provisions. Failure to act in good faith under the Dealers' Act can be found only where there is evidence of a wrongful demand enforced by threats of coercion or intimidation.

*Id.* at 95–96 (citations omitted).

Similarly, in *Gage v. General Motors Corp.,* 796 F.2d 345 (10th Cir.1986), the Court stated

[Conduct actionable under the ADDCA] must clearly involve coercion or intimidation or threats of coercion or intimidation of the dealer.

The Act has been very recently construed in *Globe Motors, Inc. v. Studebaker–Packard Corp.,* 328 F.2d 645 (3rd Cir.1964). Here it was stated that the statute did not provide a new remedy for breach of contract but created a new cause of action. An indispensable element of this new cause of action is not the lack of good faith in the ordinary sense, but a lack of good faith in which coercion, intimidation or threats are at least implicit. Lack of good faith is not to be liberally construed.

... [M]ere arbitrariness on the part of a manufacturer does not constitute a violation of the federal act.

*Id.* at 351 (citations omitted).

In the case *sub judice,* the plaintiff contends that GM and GMAC violated the ADDCA by constructively terminating the Zeno Buick–GMC, Inc. franchise by way of a pattern of bad faith coercive acts that eventually drove the dealership out of business. The acts include Mr. Rayborn's loan request/warranty scheme; failure to deliver automobiles to Zeno Buick; forced remodeling of the dealership facility; refusal to permit the sale of all or a portion of the dealership interest;

delay or denial of warranty reimbursements; erroneous warranty audits; failure to honor rebates; and cancellation of and other problems with the financing arrangement with GMAC.

The Court has carefully reviewed the record in this case and concludes that summary judgment is appropriate on the ADDCA claims. Giving the plaintiff the benefit of all the inferences to be drawn from the record, it is clear to the Court that the plaintiff has failed to carry its Rule 56 burden of showing intimidation or coercion, or threats of intimidations or coercion, on the part of defendants GM and GMAC. When viewed individually, the acts complained of do not constitute violations of the ADDCA, with the possible exception of Mr. Rayborn's loan/bogus warranty claim scheme. However, as stated previously, Mr. Rayborn's actions with respect to the personal loan request are not chargeable to GM.

Moreover, even when viewed as a pattern of acts or a course of conduct, the defendants' conduct does not exhibit sufficient evidence of intimidation, coercion or threats thereof under the Act. As the Court stated in *Dreiling v. Peugeot Motors of America, Inc.*, 850 F.2d 1373 (10th Cir.1988), "Coercion or intimidation must include a wrongful demand which will result in sanctions of not complied with." *Id.* at 1379. The plaintiff has not shown sufficient evidence of express or implied coercion, threats or wrongful demands for a jury to find for the plaintiff.

## V. INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCY

█ This tort claim is governed by Arkansas law, *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). After reviewing the record, the Court concludes that summary judgment in favor of defendants GM and GMAC is appropriate on this claim. The only valid business expectancies enjoyed by the plaintiff are those under the agreements entered into with GM and GMAC.

The claims by Mr. and Mrs. Zeno that there was interference with their ability to sell the dealership is not persuasive, because there has been no showing that they had a valid agreement or expectancy of selling the dealership. There may have been preliminary discussions with Mr. Warren Strickland, and possibly others, concerning the sale of some or all the dealership. However, those discussions clearly did not mature or progress to the point of becoming "valid business expectancies." The same must be said for the claims of valid business expectancies with respect to "customer satisfaction" and the warranty claims.

Finally, the Court notes that GM and GMAC were parties to or had interests in the various agreements, and as such the defendants cannot commit the tort of intentional interference with business expectancy. While a claim for breach of contract may arise from the transactions between the parties, *see, e.g., Gage*, 796 F.2d at 351, such is not before the Court. The cases of *Richard Short Oil Co. v. Texaco, Inc.*, 799 F.2d 415 (8th Cir.1986); *Navorro–Monzo v. Hughes*, 297 Ark. 444, 763 S.W.2d 635 (1989); and *T.P. Leasing Corp. v. Baker Leasing Corp.*, 293 Ark. 166, 732 S.W.2d 480 (1987) illustrate these points and are dispositive of this claim.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

█ Arkansas law also governs this tort claim, and the Court has little difficulty in disposing of this claim. In *Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989), the Arkansas Supreme Court stated

[The tort of outrage] is committed under the following circumstances: One who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm may result. However, in order for a plaintiff to prevail in a case for liability under this tort, four elements must be established. It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, ...; (2) that the conduct was 'extreme and outrageous', 'utterly intolerable in a civilized community', ...; (3) that the actions of the defendant

were the cause of the plaintiff's distress, ...; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'

The tort of outrage is not easily established; merely describing conduct as outrageous does not make it so. Clear-cut proof is necessary to establish the four elements enumerated [in the case law]. We are of the opinion that summary judgment was proper because the plaintiff's allegation on the tort of outrage, even if proven, did not rise to a level sufficient to support a claim for damages for the tort of outrage.

*Id.* at 34, 781 S.W.2d at 35 (citations omitted). In the Court's view, nothing in the record reflects conduct that would rise to the level necessary to establish this tort. The summary judgment motions of GM and GMAC will therefore be granted on this claim.

## VII. BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Count III of the plaintiffs' Third Amended Complaint reads as follows:

### Implied Covenant of Good Faith and Fair Dealing

Plaintiffs incorporate by reference all of the paragraphs one through fifteen as set forth above.

16. GMC Buick, GMC Truck and GMAC owed a duty to deal fairly with Zeno and in good faith. GMC owed a duty to Zeno to Faithfully carry out the terms of the franchise agreement and provide the necessary assistance to Zeno as a GMC dealer. GMAC owed a duty to Zeno Buick to faithfully carry out the terms of the floorplan agreement and to provide wholesale financing to Zeno Buick.

17. GMC Buick, GMC Truck and GMAC, through it [sic] actions, have breached that duty and proximately caused irreparable damage to Zeno.

### A. The Applicable Law

The Court must first determine which state's law applies to these claims. In *Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir. 1991), the Eighth Circuit Court of Appeals stated, "[f]ederal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." *Id.* at 1320 (citing *Klaxon*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

The *Ritter* Court discussed Arkansas' choice of law rule applicable to breach of contract actions

In actions *ex contractu*, Arkansas courts traditionally considered three different bases for making choice of law determinations: the law of the state in which the contract was made; the law of the state where the contract is performed; and the law of the state which the parties intend to govern the contract, provided that state has a substantial connection with the contract. More recently, however, Arkansas courts have begun applying the significant contacts test. This test requires an examination of the nature and quantity of each state's contacts with the transaction at issue.

*Id.* (citations omitted). The Court concludes, after reviewing the contracts at issue, that Michigan law governs the Dealer Sales and Service Agreement between the plaintiff and GM and that Arkansas law governs the Wholesale Security Agreement between the plaintiff and GMAC.

### B. The Good Faith Claim Against Defendant GM

■ The first question under this claim is whether the Dealer Sales and Service Agreement between Zeno Buick–GMC, Inc. and defendant GM is a contract for the sale of goods under Michigan's version of the Uniform Commercial Code. If so, the UCC duty of good faith and fair dealing attaches thereto. If not, the claim against GM for breach of good faith and fair dealing must arise under the common law of Michigan.

In *Wells v. 10–X Manufacturing Company*, 609 F.2d 248 (6th Cir.1979), the Court,

within the context of a dispute over specially manufactured goods, discussed the test employed under Michigan law to determine whether a contact falls under the Uniform Commercial Code

It is clear that Article 2 of the Code is intended to have broad application. However, it also follows from the Code's continued focus on "goods," the definition of which is cast in terms of a "contract for sale," that a contract which calls merely for the rendition of services in not subject to the sales provisions of the Code.

Therefore, the fact that the party supplying a service does so in conjunction with the delivery of goods does not necessarily mean that the transaction comes within the Code.

\* \* \* \* \* \*

Irrespective of the fact that performance under the terms of the contact would have resulted in the special manufacture of goods, the contract was one for the rendition of services. The language used in the contract clearly bespeaks the intention of the parties that 10–X's obligation under the contract was essentially to provide the manpower and machine capabilities for the production of the hunting shirt. That the only material supplied by 10–X in the entire production process was thread is a factor to be considered in characterizing the contract one for services rather than goods. Finally, we note that the parties are in litigation not on a claim of defective goods, but due rather to a deficient performance of services by 10–X. Viewing the contract in the totality of the circumstances, we conclude it is correctly characterized as a contract for the rendition of services, to which the Code is not applicable.

*Id.* at 254–55 (citations and footnotes omitted).

In the case at bar, the Dealer Sales and Service Agreement provides

The purpose of this Agreement is to establish Dealer as an authorized dealer for GMC Truck motor vehicles, to establish the location from which Dealer will operate and to identify the individual Dealer Operator and owner(s) of Dealer on whom General Motors relies in entering into this Agreement. This is a personal service contract setting forth the rights and obligations of dealer and its approved Dealer Operator and owner(s) and of General Motors relating to the sale and service of GMC Truck motor vehicles and related Parts and Accessories.

In addition, this lawsuit involves alleged deficiencies in performance of the agreement by GM rather than defects in GM's automobiles, parts or accessories. The Court therefore concludes that the Dealer Sales and Service Agreement is a personal services contract rather than a contract for the sale of goods, even though the performance of this contract would result in the sale of goods. As such, the duty of good faith and fair dealing under the Uniform Commercial Code does not apply to this contract. GM's summary judgment motion will be granted on this issue.

■ The plaintiffs also contend that under the common law of Michigan, the Dealer Sales and Service Agreement is subject to an implied duty of good faith and fair dealing. In *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873 (5th Cir.1989), the Fifth Circuit Court of Appeals addressed this precise claim

Michigan common law, which controls under the dealer agreement, recognizes an implied covenant of good faith and fair dealing that applies to the performance and enforcement of contracts. Generally speaking, the implied covenant seeks to protect the contracting parties' reasonable expectations.

The implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms. Consistent with this supplementing function, Michigan courts rely on the implied good faith covenant "where a party to a contract makes the manner of its performance a matter of its own discretion."

Michigan law does not imply the good faith covenant where parties have "unmistakably expressed" their respective rights.

*Id.* at 876–77 (citations omitted). *See Bushwick–Decatur Motors v. Ford Motor Co.,* 116 F.2d 675 (2nd Cir.1940).

The Court has examined the warranty, audit and sales provisions of the Dealer Sales and Service Agreement complained of by the plaintiffs and finds those provisions sufficiently clear, specific and unambiguous to avoid the implied covenant of good faith and fair dealing under Michigan law. The Court therefore concludes that GM's summary judgment motion on this issue is well taken and the same will be granted.

### C. The Good Faith Claim Against Defendant GMAC

■ The "floorplan" Wholesale Security Agreement stated that the plaintiff agrees "upon demand to pay to GMAC the amount it advances or is obligated to advance" to others on behalf of the plaintiff. The Wholesale Security Agreement is therefore a demand note. The Wholesale Security Agreement also provided GMAC with a variety of remedies in the event of Zeno Buick's default. Finally, it is undisputed that checks issued by Zeno Buick to GMAC pursuant to the Wholesale Security Agreement were returned for insufficient funds and thereafter GMAC repossessed Zeno's inventory and placed the dealership on "COD" status.

■ Section 4–1–203 of the Arkansas version of the Uniform Commercial Code provides that "Every contract or duty within this subtitle imposes an obligation of good faith in its performance or enforcement." In *Teeter Motor Co., Inc. v. First Nat'l Bank,* 260 Ark. 764, 543 S.W.2d 938 (1976), the Arkansas Supreme Court stated

Appellant argues that appellee failed to give notice before the repossession of the automobiles. Appellant does not point out any provision of the agreement between the parties which required notice of repossession nor does appellant cite any authority that notice of intention to repossess must be given. § [4–9–503] provides:

Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. Appellant had knowledge of its default through continued negotiations between [appellant] and the appellee bank concerning [appellant's] financial difficulties. There is ample evidence that appellant was in default.

*Id.* at 766–67, 543 S.W.2d at 940–41.

Moreover, as this Court held in *Taggart & Taggart v. First Tennessee Bank, N.A.,* 684 F.Supp. 230, 236 (E.D.Ark.1988):

In the face of such an agreement [demand note], the Court is of the opinion that there is no lack of good faith defense available, much less an action in tort for bad faith. The bank was entitled to terminate the loan for any reason or for no reason and it cannot be held liable to the plaintiffs for refusing to extend when it had no obligation to do so.

Although the *Taggart* Court addressed the good faith provision of the Tennessee Uniform Commercial Code, this Court agrees with the reasoning contained therein and concludes that the result is the same under the Arkansas Uniform Commercial Code.

Under the circumstances of this case, that is, the default by Zeno Buick and the demand feature of the Wholesale Security Agreement, the Court concludes that GMAC's summary judgment motion on the plaintiff's claim for breach of the duty of good faith is well taken and the same will be granted.

### VIII. VIOLATIONS OF THE ARKANSAS MOTOR VEHICLE COMMISSION ACT

The plaintiff's final claim is that the defendants violated various provisions of the Arkansas Motor Vehicle Act, specifically Ark. Code Ann. § 23–112–403, by cancelling the Dealer Sales and Service Agreement without due cause; requiring the plaintiff to alter its capital structure; preventing the sale of the dealership; threatening the plaintiff to enter into agreements prejudicial to the dealership; and requiring the plaintiff to participate in a mandatory advertising cooperative or fund.

The Court first notes that the Arkansas Act makes it unlawful for a manufacturer or

its agent to "coerce, or attempt to coerce, any motor vehicle dealer" to take or refrain from taking certain actions. The Act also prohibits the manufacturer from taking or refusing to take certain actions.

■ The Court concludes that the defendants are entitled to summary judgment with respect to the claim that GM violated section 403(a)(2)(C) by terminating or cancelling the plaintiff's franchise without due cause. The plaintiff contends that its Dealer Sales and Service Agreement was constructively terminated by GM. However, as the Court reads the statutory language, the prohibition goes to actual termination of the franchise rather than to constructive termination. The Court notes that in October, 1990, GM renewed the Dealer Sales and Service Agreement for 5 years.

■ The plaintiff's claim that GM violated the Act by "requiring a change" in the dealership capital structure in violation of Ark.Code Ann. § 403(a)(2)(H) also fails. The Act clearly prohibits the manufacturer from "preventing or attempting to prevent by contract or otherwise any dealer from changing the capital structure of his dealership." The Act does not prohibit the manufacturer from requiring certain levels of working capital or investment under the franchise agreement.

■ The plaintiff's claim that GM prevented the sale of the dealership in violation of section 403(a)(2)(I) fails for the reasons discussed in Section IV above. There has been no showing by the plaintiff that it had anything other than preliminary or exploratory discussions with anyone concerning the sale of the dealership.

■ Finally, the Act prohibits the manufacturer or its agents from "coercing or attempting to coerce" an automobile dealer into entering agreements prejudicial to it "by threatening to cancel the franchise." Section 403(a)(2)(B). The only prejudicial agreement cited by the plaintiff is Mr. Rayborn's personal loan/bogus warranty claim offer. As discussed above, GM is not responsible for Mr. Rayborn's actions in this regard. Moreover, there has been no showing that the plaintiff was subjected to threats of franchise cancellation in connection with Mr. Rayborn's actions.

■ The only claim surviving summary judgment is the claim under section 403(a)(1)(D) that GM coerced the plaintiff "to contribute or pay money or anything of value into any cooperative or other advertising program or fund." The plaintiff claims that GM added 1% to the dealer invoice for automobiles to be used for advertisements. The plaintiff also claims that Rayborn told Mr. Zeno that the funds went to a national advertising fund and that participation in the program was mandatory. The plaintiff further claims it was entitled to 25% of the funds it paid for local advertising but Rayborn said the plaintiff was not entitled to the funds. Defendant GM denies these allegations. The Court concludes that genuine factual issues remain concerning this claim, and, therefore, summary judgment is inappropriate.

## IX.  CONCLUSION

Defendant General Motors' Motion for Summary Judgment will be granted with respect to the plaintiffs' claims under the Automobile Dealers' Day in Court Act; the tort of intentional interference with a business expectancy; the tort of intentional infliction of emotional distress; breach of the covenant of good faith and fair dealing; and all claims for violations of the Arkansas Motor Vehicle Commission Act except the claim under Ark. Code Ann. § 23–112–403(a)(1)(D) that GM coerced Zeno Buick's participation in an advertising fund. All claims against GM, except for the advertising fund claim, will be dismissed.

Defendant General Motors Acceptance Corporation's Motion for Summary Judgment will be granted with respect to the plaintiffs' claims under the Automobile Dealers' Day in Court Act; the tort of intentional interference with a business expectancy; the tort of intentional infliction of emotional distress; breach of the covenant of good faith and fair dealing; and the Arkansas Motor Vehicle Commission Act. All claims against GMAC will be dismissed.

Defendant GMAC's Motions in Limine will be denied as moot, as will the plaintiffs'

Motion to Strike. Finally, the plaintiffs' Motion for Voluntary Non–Suit as to the remaining claim against defendant GM and the claims against defendant Eddie Rayborn will be granted.

IT IS THEREFORE ORDERED that General Motors Corporation's Motion for Summary Judgment, Docket Entry No. 71, be, and it is hereby, granted in part and denied in part as discussed above.

IT IS FURTHER ORDERED that General Motors Acceptance Corporation's Motion for Dismissal and Summary Judgment, Docket Entry No. 72, be, and it is hereby, granted.

IT IS FURTHER ORDERED that General Motors Acceptance Corporation's Motions in Limine, Docket Entry Nos. 94, 96 and 98, be, and they are hereby, denied as moot.

IT IS FURTHER ORDERED that the plaintiffs' Motion to Strike GMAC's Reply to Zenos' Response to Motion for Summary Judgment, Docket Entry No. 103, be, and it is hereby, denied as moot.

IT IS FURTHER ORDERED that the plaintiffs' Motion for Voluntary Non–Suit be, and it is hereby, granted. The remaining claim against defendant GM and the claims against defendant Eddie Rayborn will be dismissed without prejudice.

### JUDGMENT

In accordance with the Court's Order entered this date, it is hereby CONSIDERED, ORDERED and ADJUDGED that the plaintiffs' claims against defendant General Motors Corporation, except the claim made pursuant to Ark.Code Ann. § 23–112–403(a)(1)(D), be, and they are hereby, dismissed. The relief sought is denied.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that the plaintiffs' claims against defendant General Motors Acceptance Corporation be, and they are hereby, dismissed. The relief sought is denied.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that the plaintiffs' claim brought pursuant to Ark.Code Ann. § 23–112–403(a)(1)(D) against defendant

General Motors Corporation be, and it is hereby, dismissed without prejudice.

IT IS FURTHER CONSIDERED, ORDERED and ADJUDGED that the plaintiffs' claims against defendant Eddie Rayborn be, and they are hereby, dismissed without prejudice.